JAMES GLASS v. STATE DEPARTMENT OF HIGHWAYS.[1]

October 31, 1941.

No. 32,884.

*Ernest F. Jacobson,* for relator.

*J. A. A. Burnquist,* Attorney General, *Charles E. Houston,* Special Assistant Attorney General, and *Joseph J. Bright,* Special Counsel, for respondent.

LORING, JUSTICE.

This case comes here by writ of *certiorari* to review an order of the industrial commission denying the relator's motion for the taking of additional evidence and for a rehearing in a workmen's compensation matter, the position of the relator being that the industrial commission abused its discretion as a matter of law in denying the relator's motion.

Relator was injured in the course of his employment with the department of highways on May 8, 1937. The department was notified of the accident, but the relator continued at his regular

[1]Reported in 300 N. W. 593.

work without loss of wages until April 5, 1939, when he was separated from the service. April 24, 1939, he submitted to an operation for hernia and was paid compensation for six weeks. June 20, 1939, the industrial commission made its findings and final proposed award of six weeks' compensation. June 23, 1939, relator filed written objections to the proposed award and on the evidence taken at hearings held August 22, 1939, and December 29, 1939, the referee made findings providing for eight weeks' compensation. From the decision of the referee the relator appealed to the industrial commission and on December 18, 1940, moved the commission for an order for the taking of further testimony or for a trial *de novo*. January 4, 1941, the commission denied the motion for rehearing and adopted and affirmed the findings and award of the referee.

The injuries inflicted upon the relator in the accident of May 8, 1937, consisted of a strain of the back muscles, chip fracture of the ulna, body bruises, and inguinal hernia. It was also the claim of the relator that he fell on his head at the time of the accident. Relator's attending physician was of the opinion that there had been a complete recovery from all of the injuries and that there were no permanent results. He was also of the opinion that relator's disability after the operation terminated at the end of eight weeks. In December 1939 relator complained of constipation, weak spells, and pains in the neighborhood of the scar left by the operation and toward the heart, as well as in the back and the left arm. He also claimed restlessness and other weakness. Medical examination disclosed that he was afflicted with a duodenal ulcer, spastic constipation, and myocardial damage to his heart, to all of which the medical opinion was that the accident had no relation. In October 1939, at the suggestion of his counsel, the relator was examined at the University Hospital, and it is his claim that he was there treated by the application of X-rays to his head and, although the hospital records disclose no information upon which an inference of brain tumor could be based, relator now claims that the alleged X-ray treatments are given only

for malignant brain tumors and that based upon this evidence a rehearing *de novo* should be had. There is no evidence of the X-ray treatments to his head other than his own affidavit.

It will be seen from the foregoing statement that there was no abuse of discretion by the commission. From the showing made, it would have been difficult for the commission to have arrived at any other decision. On so slender a showing as that made by the relator we could not hold that there was not ample evidence to support the commission's action.

The writ of *certiorari* is discharged and the order of the commission affirmed.