# JOHN PETERS v. ARCHER-DANIELS-MIDLAND COMPANY AND ANOTHER.
## JULIUS A. SCHMAHL, RESPONDENT.[1]

January 4, 1947.

No. 34,283.

[1]Reported in 26 N. W. (2d) 29.

*Reynolds & McLeod,* for relators.

*T. M. Hynes,* for respondent employe.

*J. A. A. Burnquist,* Attorney General, and Victor H. Gran, Assistant Attorney General, for respondent Julius A. Schmahl.

PETERSON, JUSTICE.

This is a controversy between the employer and its insurer, on one side, and the custodian of the special compensation fund created under § 176.13 (§ 4276), on the other, to determine in what proportions they are liable respectively to the employe for compensation for permanent total disability. Because the insurer's rights are the same as the employer's, for purposes of convenience we shall refer to both of them as the employer.

On April 9, 1943, the employe sustained an accidental injury arising out of and in the course of his employment, which of itself produced 50 percent permanent *partial* disability, but in combination with a prior disability produced permanent *total* disability. The prior disability was caused by injuries sustained in an automobile accident about 14 years prior to the injury occurring in his employment. Both injuries were to his spine. At the time of the injury occurring in his employment, employe was almost 63 years old and earned a weekly wage of $24.73. After the accident, because of his disability, he not only was incapable of earning, but actually did not earn, anything.

The referee found that the employe was temporarily totally disabled for 52 weeks; that he was permanently partially disabled for 300 weeks, including the 52 weeks when he was totally disabled; that because the employe's disability was 50 percent his loss of earning ability was 50 percent also; that he was entitled to compensation from the employer for total disability at $16.39 per week for 52 weeks and at $8.19½ per week for 248 weeks, which he commuted without objection by the employer to $16.39 per week for 124 weeks, or a total of $2,884.64, and from the special compensation fund after

the cessation of the weekly payments by the employer for the remainder of the compensation due for permanent total disability not to exceed $7,115.36, or a total of not to exceed $10,000.

The commission, on appeal from the referee's decision, found that the employe had a 50-percent permanent partial disability at the time of injury; that the injury caused loss of the remaining 50 percent of his physical ability, which, combined with his previous disability, caused permanent total disability; that at the time of the injury the employe with his previous disability was able to, and did, earn a weekly wage of $24.73; that afterward in his partially disabled condition he was unable to, and did not, earn anything; that he was entitled to compensation not to exceed $10,000 for the permanent total disability; that the employer was liable for permanent partial disability during 300 weeks in an amount equal to two-thirds of the difference between his daily wage at the time of the injury and the one he was able to earn in his partially disabled condition, or $16.49 per week, making a total of $4,947; and that the special compensation fund was liable for the remainder of the weekly payments for permanent total disability amounting to $5,053.

The question for decision is whether the commission correctly applied the rule prescribed by § 176.13 (§ 4276), that where an employe sustains an injury by industrial accident which of itself would cause only permanent *partial* disability, but when combined with a prior disability causes permanent *total* disability, the employer is liable only "for the permanent partial disability caused by the subsequent injury." The employer contends that the award for permanent partial disability for 300 weeks is erroneous, for the reason that it is based upon *total* and not *partial* disability. This, it is urged, appears from the fact that the award fails to apportion the compensation for the partial disability as between the disability caused by the subsequent injury and that caused by the prior disability. It is claimed that if such an apportionment were made the employer and its insurer would be liable for compensation for 300 weeks in an amount equal to two-thirds of one-half of $24.73, or $8.24 1/3 per week. Apparently the employer is willing to pay compensation for

52 weeks at the rate for total disability and to have the remaining 248 weeks for partial disability commuted to 124 weeks so as to make the weekly payments double what they otherwise would be. In that event, the employer would be liable for 176 weeks at $16.49 or not to exceed $2,902.24 and the special compensation fund for not to exceed $7,097.76.

■ The rules governing the apportionment of liability for payment of compensation as between the employer and the special compensation fund, where an employe sustains an industrial injury which "of itself" would cause only permanent *partial* disability, but when combined with a prior disability causes permanent *total* disability, are prescribed by § 176.13 (§ 4276). That section provides that in such cases the employe shall be entitled to compensation for permanent total disability as under § 176.11(d), (§ 4274[d]), which provides that the weekly payments shall continue during permanent total disability and shall not exceed $10,000; that the employer shall be liable only "for the permanent partial disability caused by the subsequent injury"; and that the state shall pay the remainder of the compensation for permanent *total* disability out of the special compensation fund—that is, the difference between the compensation for permanent *total* disability and that for permanent *partial* disability. While the statute treats the combined injuries as causing permanent total disability, it declares that the last employer shall be liable only for such permanent *partial* disability as the subsequent injury "of itself" caused. In other words, the permanent partial disability attributable to the subsequent injury is to be determined as a separate and independent one entirely divorced not only from any prior disability, but also from the permanent total disability which it produces by combining with the prior disability. The reasons for the statute, its history, and its policy have been set forth at length in Peterson v. Halvorson, 200 Minn. 253, 273 N. W. 812, and Lehman v. Schmahl, 179 Minn. 388, 229 N. W. 553.

■ We think that the employer's contention that the compensation awarded for permanent partial disability should be apportioned in the same manner as the liability for permanent total disability is

apportioned under § 176.13 (§ 4276) between the employer and the special compensation fund should not be sustained. While § 176.13 (§ 4276) prescribes the rule for apportioning as between the parties their respective portions of the liability for the employe's permanent total disability by assigning to the employer liability only for the permanent partial disability caused by the subsequent injury "of it-self" and to the special compensation fund liability for the remainder thereof within the limitations mentioned, it does not prescribe the rule for determining the amount of compensation for permanent partial disability. The apportionment of liability is one thing; the determination of the amount of compensation is another. The amount of the compensation is to be determined under § 176.11(c) (44), (§ 4274[c][44]), which provides that where, as here, the case is one not enumerated in the schedule of the statute, "the compensation shall be 66 2/3 per cent of the difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition, subject to a maximum of $20.00 per week." This statute does not provide for any apportionment of the difference in the wage of the workman at the time of injury and the wage he is able to earn afterward in his partially disabled condition. The compensation to be allowed for permanent partial disability is to be determined exclusively by the rule prescribed by § 176.11(c) (44), (§ 4274[c][44]), without apportioning it according to the apportionment under § 176.13 (§ 4276) of liability for permanent total disability as between the employer and the special compensation fund. The amount of compensation is to be determined by taking the difference between the daily wage of the employe at the time of injury, which means the wage that he actually earned and received at that time, and the daily wage he is *able* to earn afterward in his partially disabled condition, which means the wage he is then capable of earning, and not the wage he might actually earn or the wage he earned at the time of injury reduced by a percentage equal to the percentage of his disability. The standard is earning ability, not wages actually earned. As said in Enrico v. Oliver I. Min. Co. 199 Minn. 190, 191, 192, 271 N. W. 456, 457:

"'* * * The 'degree of physical disability is not the measure by which to determine the amount of an award of compensation.'" And

"'* * * It is his [the employe's] ability to earn, not his actual earnings, that should be the basis of the award."

In applying this rule, the commission of course could not say that merely because the employe had sustained a 50-percent physical disability he had sustained also a 50-percent loss of earning ability. To so hold would be contrary to our decision in the Enrico case, where we characterized such a finding by the referee as "arbitrary." Having in mind the rule that loss of earning ability is not measured by loss of physical ability, it was for the commission to find what loss of earning ability was caused by the partial disability. As said in the Enrico case (199 Minn. 192, 271 N. W. 457):

"The fact that relator sustained only 25 per cent permanent partial disability can affect in no way the amount required to be awarded by virtue of § 4274 [Minn. St. 1941, § 176.11]. Whether the permanent disability is only one per cent or 99 per cent, the compensation to be paid 'shall be 66 2/3 per centum of the difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition,' subject to the maximum limitations imposed by the statute. Although that rule may not in all cases work equitably, it is the standard fixed by the legislature and the one that is controlling in all cases to which it is applicable."

Consequently, it was for the commission to determine as a fact the duration and the extent of the partial disability. As to its duration, it is undisputed that it was permanent and existed during the period of 300 weeks following the injury. This is implicit in the employer's contention. The only question, then, is as to the effect of the partial disability upon the employe's wage-earning ability. It does not follow that because the employe sustained a 50-percent loss of physical ability as the result of the injury he also suffered the same proportionate loss of earning ability. If, as held in the Enrico case, there may be a loss of earning ability of one percent or 99 percent where the physical disability is 25 percent, there may be a 100-percent

loss of earning ability, where, as here, the loss of physical ability is 50 percent. In determining the amount of compensation, the commission followed the formula prescribed in § 176.11(c)(44), (§ 4274[c][44]), by taking 66 2/3 percent of the difference between the employe's actual wage at the time of injury and the wage he was able to earn afterward in his partially disabled condition. At the time of injury his wage was $24.73 per week; afterward, in his partially disabled condition, he was incapable of earning, and in fact did not earn, any wage. He had only 50-percent physical ability at the time of injury and none afterward. He earned $24.73 per week at the time of injury and had no wage-earning ability afterward in his disabled condition. This difference in wages earned and wage-earning ability continued throughout the 300 weeks.

We think that the commission's decision correctly determined the employer's liability for the permanent partial disability caused by the employe's subsequent injury "of itself" and that its apportionment of the permanent total disability by assigning liability to the employer for such permanent partial disability and to the special compensation fund was in accordance with § 176.13 (§ 4276).

Affirmed.