BYRON R. LEE v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

February 24, 1950.

No. 35,026.

---

[1]Reported in 41 N. W. (2d) 433.

*John F. Dulebohn* and *Donald M. Jardine,* for relator.
*John A. Goldie* and *Samuel I. Sigal,* for respondent.

MATSON, JUSTICE.

Certiorari to review an order of the industrial commission award-ing respondent, Byron R. Lee, compensation for total disability.

The issues for determination involve:

(1) The admissibility of the testimony of an expert medical witness;

(2) The admissibility of the testimony of the supervisor of placements for the state employment service, to the effect that jobs with a reasonable continuity are not available for a person handicapped with Lee's disabilities; and

(3) Whether the evidence sustains the commission's findings.

Lee, in the course of his employment in 1942, while flagging streetcars through a Memorial Day parade in Minneapolis, was injured by being caught and rolled between two streetcars traveling in opposite directions. He was hospitalized from May 30 to September 19, 1942, a period of more than three and one-half months. The report of the attending physician, admitted by stipulation, stated that Lee was suffering from shock upon admission to the hospital. Upon being told of the loss of sight of his left eye, Lee broke down and cried and was very depressed for a long period thereafter. On September 19, 1942, the attending physician stated, "Patient is obviously neurotic." Lee continually complained, as he does now, of pain in his left shoulder. Hypodermics were administered, but, as Lee still complained, a harmless solution of water and soda was administered, with practically equal success. The commission found, and there is little dispute, that Lee is 100 percent disabled in the left eye, 75 percent in the left arm, and 10 percent in the right ankle and foot. Relator has paid all medical bills and compensation for the above permanent partial disability. Relator, however, contends that there is insufficient competent evidence to sustain the commission's finding that Lee, by reason of the above disabilities, coupled with post-traumatic neurosis, is permanently and totally disabled.

Relator, in seeking to establish that the commission's findings are not sustained by the evidence, contends that they are largely based upon a consideration of erroneously admitted evidence. Particular objection is made to the testimony of Dr. N. J. Berkwitz, an expert neurologist and psychiatrist, who, in behalf of Lee, expressed the opinion that Lee, by reason of his physical injuries plus the mental changes—constituting a traumatic neurosis—which had de-

veloped as a consequence thereof, was totally and permanently disabled. Relator asserts that this opinion was based either wholly or partially on the history of the case as told to Dr. Berkwitz by Lee in the course of a personal examination of Lee which was made for the express purpose of qualifying the doctor as an expert medical witness, and that as such his testimony is inadmissible. We do not agree with relator's interpretation of the evidence. Taking the testimony of Dr. Berkwitz as a whole, without isolating some single phrase or sentence from its context, it is quite clear that the opinion of this expert witness was elicited by, and based upon, a hypothetical question which, with methodical precision, embodied within its assumed facts, all relevant symptomatic factors, whether objective or subjective, inclusive of those subjective complaints which Lee had expressed directly to such expert witness. Even if Dr. Berkwitz in one of his opinion answers had in fact for the moment based his opinion on subjective symptoms disclosed by his personal examination of Lee, it was error without prejudice, in that he otherwise carefully and explicitly expressed the same opinion as being based on substantially similar factors which were embodied in the hypothetical question. It is the well-established rule that a physician called to give an expert opinion may testify as to a person's physical and neurological condition where the hypothetical question eliciting his opinion is based on all the facts admitted or established, or which, if controverted, might reasonably be found from the evidence. Crozier v. Minneapolis St. Ry. Co. 106 Minn. 77, 118 N. W. 256; Hohenstein v. Dodds, 215 Minn. 348, 10 N. W. (2d) 236. It follows that *the rule that the opinion of a physician as to the condition of an injured or deceased person is inadmissible where, it is based wholly or partially on the history of the case as told to him by such person in the course of a personal examination made for the purpose of qualifying such physician as an expert medical witness*[2]

[2]Preveden v. Metropolitan L. Ins. Co. 200 Minn. 523, 274 N. W. 685; Williams v. G. N. Ry. Co. 68 Minn. 55, 70 N. W. 860, 37 L. R. A. 199; Tillman v. Stanley Iron Works, 222 Minn. 421, 24 N. W. (2d) 903; Sund v. C. R. I. & P. Ry. Co. 164 Minn. 24, 204 N. W. 628; Faltico v. Minneapolis St. Ry. Co. 198 Minn. 88, 268 N. W. 857; Annotation, 65 A. L. R. 1217.

does not have any application where the opinion of such physician is based upon a hypothetical question which substantially embodies all the relevant symptomatic facts—which are admitted or which might reasonably be found from the evidence—inclusive of such injured person's subjective complaints.

Relator asserts it was error to permit the supervisor of placements of the Minnesota state employment service to testify that gainful jobs with reasonable continuity were not available for a person handicapped with the disabilities similar to those with which Lee is afflicted. Relator contends that such testimony was immaterial because (1) it had no bearing upon the question before the commission, namely, the extent of Lee's disability; (2) Lee had moved to California, and therefore it was immaterial whether a job was available in Minnesota; and (3) because the record does not indicate that Lee had ever looked for a job in Minnesota. With this contention we do not agree. In prior decisions, we have held that, although an injured person may be able to perform some parts of his occupation, he may be held to be totally disabled if he is unable to perform the substantial and material parts of some gainful work or occupation with reasonable· continuity. Wilson v. Metropolitan L. Ins. Co. 187 Minn. 462, 245 N. W. 826; Green v. Schmahl, 202 Minn. 254, 278 N. W. 157. This rule can only mean that the injured employe must be in such condition that prospective employers will normally and reasonably be willing to hire him despite his handicaps. If reasonably stable employment is not available for an employe by reason of certain injuries which have crippled him physically or neurologically, evidence of that fact—through the testimony of an experienced employment supervisor—is both material and relevant in determining whether the employe's disability is of such a character that he has no reasonable likelihood, *while such disability continues,* of being able to obtain and pursue an income-yielding occupation with reasonable continuity as contemplated by M. S. A. 176.11, subd. 5. See, Baker v. MacGillis Gibbs Co. 222 Minn. 460, 25 N. W. (2d) 219. The purpose of the testimony is not to establish the nature of the disability or its duration, but to de-

termine, assuming the existence of certain injuries, whether employment is available for a person so handicapped. An employe who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled. He who has no reasonable prospect of selling his services has no material earning capacity and is substantially helpless as a self-sustaining unit of society. As pointed out in the Green case (202 Minn. 256, 278 N. W. 158):

"'* * * sporadic competence, occasional, intermittent, and much limited capacity to earn something somehow, does not reduce what is otherwise total to a partial disability. The statutory phrase 'working at an occupation which brings him an income,' like that of insurance 'following any occupation,' implies at least a reasonable degree of continuity of occupational capacity. * * * 'Occasional work for short periods by one generally disabled by impairment of mind or body does not as a matter of law negative total permanent disability.' "

The fact that Lee had moved to California, or that he had not looked for employment within Minnesota, is of little significance. The testimony as to the availability of jobs for a person of Lee's disabilities was pertinent not only to Minnesota but to other areas, and any objection to such testimony from a territorial standpoint is pertinent only as to its weight and not as to its admissibility.

▮▮▮ Taking, as we must, the view of the evidence most favorable to the findings,[3] the evidence as a whole reasonably sustains the findings of the commission that on July 17, 1944, Lee became and was totally and permanently disabled, by reason of *post-traumatic neurosis, coupled with a permanent loss of the left eye, a 75 percent permanent partial disability of the left arm, and a 10 percent permanent partial disability of the right foot and ankle.* On July 19, 1943, less than a year after his release from the hospital, Lee re-

---

[3]Kiley v. Sward-Kemp Drug Co. 214 Minn. 548, 9 N. W. (2d) 237; Eischen v. Fairmont Canning Co. 225 Minn. 295, 30 N. W. (2d) 586.

turned to work as a streetcar conductor. On the second day of his return, when he left his streetcar to flag a crossing, he stumbled and fell, fracturing a bone in his foot, which disabled him until August 4, 1943, when he again returned to work in the capacity of a flagman. On October 29, 1943, he resumed his work as a conductor. He had great difficulty in performing his duties; the jiggling of the streetcar bothered him, and the disability of his left arm caused him to drop tokens frequently. On July 26, 1944, he was discharged for alleged mishandling of fares. He then sought other work without much success. He worked on income tax statements, but his nervousness caused the figures to blur. Then he tried house-to-house canvassing, but this caused his right foot to swell. He obtained *intermittent and spasmodic* work with a detective agency, but this necessitated little but sitting or walking for short distances. He was troubled with sleeplessness. With little exercise, he perspired even during cold weather. Upon moving to California, he sought employment with little success. He and his 13-year-old son commenced building an addition to their house, but Lee found that he could do little of the heavy work and that he needed to rest after about an hour's work. A neurologist, testifying for relator, said that if he assumed that all of Lee's subjective complaints were true he was of the opinion that Lee was suffering from "a very large additional degree of nervous disability," but he was unable to say that it would render him totally disabled. Dr. Berkwitz, on the other hand, was of the opinion that Lee was totally disabled as a result of his physical injuries and of his post-traumatic neurosis. It was for the industrial commission, as the trier of fact, to determine, in the light of the evidence as a whole, whether the assumptions of fact embodied in the hypothetical question, upon which Dr. Berkwitz based his opinion of total disability, were true. 2 Dunnell, Dig. & Supp. § 3337. The commission could reasonably so find. As is not at all unusual, there was a conflict in expert opinion. A conflict in the opinions of expert witnesses, however, is to be resolved by the trier of fact, and in so doing the trier of fact may determine the comparative weight to be given to the respective opinions and consider

322

the qualifications of each expert and the source of his information. Koenigs v. Thome, 226 Minn. 14, 31 N. W. (2d) 534; In re Estate of Gordon, 184 Minn. 217, 238 N. W. 329; 2 Dunnell, Dig. & Supp. § 3334.

The record clearly sustains the commission's findings of total disability. The order of the commission is affirmed, and respondent is allowed $250 attorney's fees over and above his costs and disbursements.

Affirmed.