ELLA ORBKE v. MORRISON GARMENT COMPANY
AND ANOTHER.
ARTHUR HANSEN, STATE TREASURER, CUSTODIAN OF
SPECIAL COMPENSATION FUND.

84 N. W. (2d) 682.

August 9, 1957—No. 37,068.

*Hansen, Hazen & Lynch,* for relator.
*Reynolds & McLeod,* for respondents employer and insurer.
*Miles Lord,* Attorney General, and *Robert Latz,* Special Assistant
Attorney General, for state treasurer, custodian of special compensa-
tion fund.

Frank T. Gallagher, Justice.

Certiorari to review a decision of the Industrial Commission denying
petitioner's claim and an order denying a petition to vacate and to
reopen for additional testimony.

This claim was brought under M. S. A. 176.13, sometimes called
the subsequent- or successive-injury statute. The claim of the employee
before the commission was against Arthur Hansen, state treasurer, as
custodian of the special compensation fund, for compensation from
such fund which would be in addition to the compensation petitioner
has received from her employer for the permanent partial disability

incurred while in his employ, and is based upon the combination of the permanent partial disability, caused by compensable injury, with a previous disability, which combination has resulted in permanent total disability.

The petitioner, Mrs. Ella Orbke, was 62 years of age at the time of the injury which initiated this proceeding. Petitioner has an eighth grade education and her work experience has been that of waitress, press operator in a laundry, and power sewing machine operator in the garment industry.

During her employment as a press operator in a laundry, in about 1939, she began to suffer from arthritis which first began gradually in the hands and wrists and then seemed to suddenly and severely strike her knees so that in 1939 she was confined to Ancker Hospital for three months. The arthritis also affected her feet and ankles. She was advised not to return to laundry work, and was on relief for a time and then got work on a WPA sewing project. She later obtained work as a power sewing machine operator at the Morrison Garment Company in 1941. She had another severe siege of arthritis in 1943 or 1944, went to Ancker Hospital for three months, and was off work for about two years. She returned to the Morrison Garment Company about in 1947, still using a cane, and continued working there until December 19, 1951, when in the course of her employment she fell and fractured her right hip.

An operation was performed to set the fracture on December 21, 1951. A process developed in the head of the right femur and a second operation became necessary May 10, 1953, at which time the head and neck of the right femur were removed and a metal ball prosthesis was inserted.

Two doctors, Dr. Arthur H. Pedersen, a surgeon, called as a witness by the employee, and Dr. Donovan L. McCain, an orthopedic surgeon testifying for the employer and insurer, both said that the injury at Morrison Garment Company alone would not have caused permanent total disability. Both doctors testified that by reason of the combined disability caused by the injury of December 19, 1951, and the previous disabilities of the knees, feet, ankles, hands and wrists, caused by the arthritis she is permanently and totally disabled. There was no

medical testimony to the contrary, although in answer to the question "What would your recommendation be as to the activities that Mrs. Orbke should and can safely carry on?" Dr. Pedersen replied, "I think she should participate in all the activities without fatigue and without pain." Petitioner had admitted making no attempt to seek employment since her injury.

Both doctors said that Mrs. Orbke's arthritis was rheumatoid arthritis, which often occurs in youth or middle age, is degenerative in a sense, but is not the true degenerative or "wear and tear" arthritis which accompanies advanced age. This, they said, is known as hypertrophic arthritis. Dr. McCain said rheumatoid arthritis involves the capsule and soft tissues of a joint and produces changes which are irreversible. He made the comparison between these soft tissues and the bushing of a bearing and illustrated the limitation of motion as a result of the arthritis by saying: "Once a bushing of a bearing has been worn out, the motion is limited." Dr. Pedersen said that the mechanical disabilities resulting after the acute stage passes are as definite in limiting the use of the joint as a disability caused by accident or injury.

Both doctors expressed the opinion that it is the usual thing for rheumatoid arthritis to reach a point where it does not appear to progress any further—described as reaching a plateau where the acute stage ceases or the arthritis "burns itself out"—so that the patient is left with disabilities which remain static. Dr. McCain admitted it is possible that the progression of the arthritis may just be halted for a certain length of time and then become progressively worse again or that an affected area could "flare up" again.

Petitioner testified that her arthritis continued to progress from the time it started, approximately in 1939, to about December 1950, which would mean the progression halted about a year prior to her accidental injury. She testified that from about December 1950 until the time of the hearing in 1955 the disabilities in her fingers, hands, wrists, feet, ankles, and knees remained the same. Dr. Pedersen examined the petitioner in February 1955 and June 1955 and said there was no progression of the arthritis during that period. He said that he could only rely on what petitioner told him as to whether the progression had stopped about December 1950. Dr. McCain observed the em-

ployee from December 1951 until March 1955, about 3½ years, and testified that during that time the mechanical disabilities from arthritis remained the same. Dr. McCain testified he believed the arthritis had "burned itself out" in this case prior to the injury, as the petitioner testified. He based his conclusion on the petitioner's statements to him, his observation of her being able to use the affected parts of her body without pain, and his conversations with a Dr. Martin, who had treated the patient for her arthritis up to a point where he had seen her only on occasions.

Accompanying the employee's petition to the commission to vacate and reopen were affidavits from her and her employer to the effect that her earnings depended on her output as a piece worker and that her arthritic condition did impair her earning ability.

The referee before whom the matter was initially heard found that the employee's arthritic condition constituted a previous disability within the provisions of § 176.13 and that the disability resulting from the accidental injury of December 19, 1951, combined with the previous disability, has rendered the employee permanently and totally disabled. As a result of this finding the referee awarded compensation from the special compensation fund. On appeal the Industrial Commission reversed the determination on the ground that petitioner's arthritis was of a degenerative nature which progressed independently of her compensable injury and that this arthritic condition did not come within the term "previous disability" as used in § 176.13 so as to be compensable out of the special compensation fund.

The issue presented to the court is whether petitioner's disability which existed prior to her accidental injury and which was caused by rheumatoid arthritis comes within the term "previous disability" in § 176.13 so as to entitle her to the benefit of that section, which provides in part:

"If an employee receives an injury which of itself would cause only permanent partial disability, but which, combined with a previous disability, does in fact cause permanent total disability, the employer shall only be liable for the permanent partial disability caused by the subsequent injury.

"(a) In addition to compensation for such permanent partial dis-

ability and after the cessation of the payments for the prescribed period of weeks, the employee shall be paid by the state the remainder of the compensation that would be due for permanent total disability, as provided for by section 176.101, subdivision 3(1-42 inclusive), out of a special fund known as the special compensation fund."

The respondent custodian of the special compensation fund contends that the proceedings here present essentially the same problem which was before this court in Rikala v. Rundquist Const. Co. 247 Minn. 401, 77 N. W. (2d) 551, namely, whether an arthritic or rheumatic condition can constitute a "previous disability" within the meaning of the Workmen's Compensation Act, and specifically § 176.13. He cites the rule laid down with reference to degenerative diseases in Senske v. Fairmont & Waseca Canning Co. 232 Minn. 350, 45 N. W. (2d) 640, and reiterated in the Rikala case.

In our opinion the problem presented in the instant case differs from those in the above cases.

We held in the Rikala case that where an employee, although he suffered hypertrophic arthritis, was not disabled from earning full wages before the injury there was no "previous disability" within the statute providing for recovery from the special compensation fund where a previous disability and an industrial accident combine to produce permanent total disability. In that case the employee was denied recovery from the fund even though a compensable accident aggravated his arthritic condition so as to produce total disability. The court further said there that there was no satisfactory evidence upon which to base a finding that the permanent total disability claimed, and from which the employee suffered, had not come upon him *both before and after the date of his injury* through natural causes and degenerative effects of progressive hypertrophic arthritis.

Senske v. Fairmont & Waseca Canning Co. *supra,* decided prior to the Rikala case, involved certiorari upon the relation of the employee to review a decision of the Industrial Commission denying a petition for approval of a lump-sum settlement entered into with the employer, its insurance company, and the state treasurer as custodian of the special compensation fund. We held that the Industrial Commission's refusal to approve the proposed lump-sum settlement was not an abuse

of discretion where the medical reports supplied no basis for a finding that the accidental injury received by the employee had combined with a prior disability existing at the time of his accident to produce a permanent total disability so as to qualify the employee for a grant of any total disability benefits from the special fund. The court said in that case, and reiterated the principle in the Rikala case, that (232 Minn. 362, 45 N. W. [2d] 649):

"* * * Degenerative diseases such as arteriosclerosis *which progress normally and exist independently of an accidental injury* do not constitute a preexisting disability within the meaning of the compensation act."

Upon petition for reargument in the Senske case we further held that a lump-sum settlement, as a departure from the normal mode of periodic payment of disability benefits, should be allowed only with a cautious regard for the welfare of the employee and the protection of the public.

The distinctions between those two cases and the one at bar are obvious. In the Senske case there was no basis for a finding from the medical reports that the accidental injury received by the employee had combined with a prior disability so as to produce a permanent total disability which would qualify the employee for a grant of total disability benefits from the special fund. In the Rikala case there was no satisfactory evidence upon which to base a finding that the permanent total disability claimed and from which the employee suffered had not come upon him *both before and after the accident* through natural causes and degenerative effects of the progressive hypertrophic arthritis. In the instant case we have a different situation. Here there is satisfactory medical testimony that the arthritic condition from which the employee suffered had reached a plateau where the acute stage ceased, or in other words, that the arthritis had "burned itself out," about a year before the date of the accident. Doctors for the employee as well as the employer and insurer both testified that by reason of the combined disability caused by the injury of the employee on December 19, 1951, and the previous disabilities caused by the arthritis she is permanently and totally disabled even though one doctor expressed

the thought that she should participate in all activities without fatigue and without pain.

It is therefore our opinion that the record here, including the medical testimony, furnished a basis for a finding that the actual injury received by the employee on December 19, 1951, had combined with the prior disability existing at the time of the accident so as to produce a permanent total disability which would qualify her for a grant of disability benefits from the special fund.

The test here is not whether the progression of the arthritis had stopped before the accident and will never progress or "flare up" again but rather whether there was enough disability before the accident which, combined with the disability caused by the accident, produced a permanent total disability. We think that the testimony substantiates that there was and that the employee qualifies for a grant of disability benefits from the special fund.

Attorneys' fees are allowed in the amount of $250.

Reversed.