FRANK E. McGUIRE v. VIKING TOOL & DIE
COMPANY AND ANOTHER.
STATE TREASURER, CUSTODIAN OF
SPECIAL COMPENSATION FUND.

104 N. W. (2d) 519.

July 1, 1960—No. 37,945.

338

*Robb, Robb & Van Eps,* for relators.

*Walter F. Mondale,* Attorney General, and *O. T. Bundlie, Jr.,* Assistant Attorney General, for respondent State Treasurer.

*Goldie, Sigal & Cohen,* for respondent employee.

NELSON, JUSTICE.

Certiorari to review a decision of the Industrial Commission. The issue is whether the record contains sufficient competent evidence entitled to evidentiary weight to sustain the conclusion of the commission that employee herein is permanently and totally disabled and entitled to benefits under the Workmen's Compensation Act for that type of disability.

The employee, Frank E. McGuire, first sustained an injury on May 6, 1946, while in the employ of Furnell & Webb Transfer Company. That injury occurred while employee was engaged in sliding a tank into the basement of a building. A trap door weighing 250 pounds, composed of oak and steel, 4 or 5 inches thick, came down on his head striking him to the ground. He remained unemployed until about June 1954, a period of approximately 8 years. He received workmen's compensation for the period and was then advised by the Industrial Commission that he was eligible to apply to the special compensation fund for additional compensation benefits. The record indicates that he did not apply for that compensation but instead went to work in the fall of 1954 for Meadowbrook Manor, Inc., as a janitor. He worked there for 11 months until injured while so employed on October 4, 1955.

The second injury, which was to his back, occurred while he was running an electric sander on tile steps in one of the apartment buildings owned by Meadowbrook Manor, Inc. He continued to work on this job with difficulty until the latter part of October 1955. He re-

ceived medical treatments for his back, but the pain was such in his back and legs that he ceased any work from October 1955 until the middle of March 1956, at which time he was still wearing two back belts or braces.

He next applied for and obtained a job working for the Richfield Car-Wash where he was assigned to wiping the tops and upper windows of cars. He continued until June 1956 when he ceased work, later obtaining a job on July 9 or 10 as janitor for the Milner Hotel until August 25, 1956, when he undertook dishwashing at the Andrews Hotel for a week.

Early in September 1956, he found a job with the Viking Tool & Die Company providing him a steady, regular job as a janitor. There he did mopping, sweeping, dusting, polishing, and cleaning of toilets. He continued to work full time for this company, including overtime to the extent of 5 or 6 hours per week. While walking in the plant on June 8, 1957, one of his fellow employees, walking in back of him, accidentally stepped on his pants leg causing him to fall to the concrete floor with his whole weight on his left knee. The floor at this point was overlaid with small pebbles or rocks, which had been carried in by wet shoes. The chief injury from this accident was to his left knee, but he sustained other incidental injuries. The record indicates that he had had no pain or trouble with the left knee before June 8, 1957. He was treated by a physician and furnished crutches.

The employee has not worked, according to the record, since June 8, 1957, and has not felt able to work. The record indicates that due to his head injury of May 1946 he has suffered from dizziness, difficulty with his memory, headaches, noises in his ears, and difficulty in mental concentration. The pain and weakness in his back has continued since his injury of October 1955, the pain radiating down into both legs. His injury of June 8, 1957, appears to have left his left knee and leg weak to the extent that it causes him to fall down at times. Pain and stiffness continue in the left knee. The employee's work experience has all been in unskilled labor.

Employee's witness Dr. Sidney K. Shapiro, a specialist in neurology and psychiatry, testified that employee obviously was "highly motivated to work," and this appears to have been indicated when he

took the job with the Viking Tool & Die Company in 1956 in spite of two serious injuries.

Dr. Meyer Z. Goldner, specialist in orthopedic surgery, testified that employee has a 25- to 30-percent permanent partial disability of the back resulting from his injury of October 4, 1955, and a 20-percent permanent partial disability of the left leg as a result of the accident of June 8, 1957.

Dr. Shapiro stated that in his opinion employee had permanent residuals from the head injury of 1946; permanent residuals from his previous low back injury of October 4, 1955, resulting in a 25- to 35-percent permanent disability of the back, probably from a ruptured intervertebral disc; and a permanent disability of the left leg due to the injury of June 8, 1957, but that the percentage of that disability was an orthopedic problem. Dr. Shapiro gave it as his opinion that the employee is permanently and totally disabled as a combined result of the three permanent disabilities caused by the three injuries and is unable to engage in sustained gainful work; that surgery to the leg was not advisable because the employee's head injury apparently had been an organic brain injury.

Charles Rathjen, working supervisor in charge of the skilled and semiskilled placement unit for the Minnesota State Employment Service, with 14 years' experience with the Department of Employment Security, was called as an employment expert in behalf of employee. It is a part of Rathjen's duties to evaluate the ability of applicants for employment and to refer them to employers. The record indicates that Rathjen has a background of experience in his field and that he had an opportunity to observe employee during his interviews with him. This expert gave his opinion that employee was not employable or acceptable to employers in any known branch of the labor market at the time of the hearing and that his unemployability was due to the three disabilities hereinbefore referred to. Little if any contradiction as to employee's unemployability appears in the record in opposition to Rathjen's testimony or otherwise. See Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433, 16 Minn. W. C. D. 153, as to the materiality and relevancy of the testimony of the supervisor of placements.

The employer and insurer called Dr. Frank J. Ankner, a physician and specialist in surgery, to testify in their behalf. The record does not indicate that Dr. Ankner claims to be a specialist in orthopedics, neurology, or psychiatry. He testified that he saw employee once on August 31, 1957; that employee then had a 15-percent permanent partial disability of the left leg as a whole. He based this upon pain, instability, and weakness of the left knee. Dr. Ankner did not make any findings with respect to the head injury. He gave as his opinion that the employee was not permanently and totally disabled. He admitted that in order for him to give an opinion as to the employability of employee he would, as a doctor, have to know about the symptoms or residuals of the old head injury as well as the limitations with regard to employee's back and left leg. Dr. Ankner testified with regard to employee's alleged ability to perform light work, but this testimony was stricken by the referee upon motion of employee's counsel on the ground that the doctor lacked the true picture of the employee's disabilities, especially since he knew nothing about employee's head injury and had made no examination relating thereto.

■ Taking the testimony in the light most favorable to the employee, it would appear that the record stands undisputed, both from the standpoint of lay testimony and medical testimony, that employee is permanently and totally disabled as a combined result of the permanent partial disabilities sustained in the three accidents.

■ We have held in interpreting the Workmen's Compensation Act of this state that, where a partially disabled workman suffers an injury which of itself would cause only partial disability, but which combined with a previous disability causes total disability, he is entitled to receive the additional compensation provided for by the statute out of the special fund although his previous disability did not result from an industrial accident. Lehman v. Schmahl, 179 Minn. 388, 229 N. W. 553, 6 Minn. W. C. D. 144; Peters v. Archer-Daniels-Midland Co. 223 Minn. 168, 26 N. W. (2d) 29, 14 Minn. W. C. D. 318; 21 Dunnell, Dig. (3 ed.) § 10410(24).[1]

---

[1] In the following case it was held that the record sustained a finding of permanent total disability: Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433, 16 Minn. W. C. D. 153.

 Employer and insurer complain that the testimony of Dr. Shapiro was in large measure based upon a hypothetical question and therefore was lacking in competency as expert medical testimony. We held in Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433, 16 Minn. W. C. D. 153, that it is for the Industrial Commission, as the trier of fact, to determine, in the light of the evidence as a whole, whether the assumptions of fact embodied in a hypothetical question upon which an expert witness bases his opinion of total disability are true. See, 7 Dunnell, Dig. (3 ed.) § 3337.[2]

We also said in the Lee case that, although an injured person may be able to perform some parts of his occupation, he may be held to be totally disabled if he is unable to perform the substantial and material parts of some gainful work or occupation with reasonable continuity.[3]

---

[2]For other cases involving "previous disability" and disability suffered from subsequent injury resulting in total disability, see Orbke v. Morrison Garment Co. 250 Minn. 399, 84 N. W. (2d) 682; Lehman v. Schmahl, 179 Minn. 388, 229 N. W. 553.

[3]Berg v. Sadler, 235 Minn. 214, 50 N. W. (2d) 266; Castle v. City of Stillwater, 235 Minn. 502, 51 N. W. (2d) 370.

M. S. A. 176.101, subd. 4, provides:

"For permanent total disability, as defined in subdivision 5, the compensation shall be 66 2/3 percent of the daily wage at the time of the injury, subject to a maximum compensation of $45 per week and a minimum compensation of $17.50 per week. If the wages of the employee at the time of the injury are $17.50 or less per week, he shall receive the full amount of his wages per week. This compensation shall be paid during the permanent total disability of the injured person but if the employee is eligible for old age and survivors insurance benefits, such benefits shall be credited on the compensation benefits payable under this subdivision after a total of $18,000 has been paid. Payments shall be made at the intervals when the wage was payable, as nearly as may be. * * *"

Section 176.101, subd. 5, provides:

"The total and permanent loss of the sight of both eyes, the loss of both arms at the shoulder, the loss of both legs so close to the hips that no effective artificial members can be used, complete and permanent paralysis, total and permanent loss of mental faculties, or any other injury which totally incapacitates the employee from working at an occupation which brings him an income constitutes total disability."

■ While there was some conflict in the medical testimony in the instant case, it was not a sharp conflict. The rule is that a conflict in the opinions of expert witnesses is to be resolved by the trier of fact, and, in determining the comparative weight to be given to the respective opinions, it may consider the qualifications of each expert and the source of his information. Koenigs v. Thome, 226 Minn. 14, 31 N. W. (2d) 534; In re Estate of Gordon, 184 Minn. 217, 238 N. W. 329; 7 Dunnell, Dig. (3 ed.) § 3334.

■ While this appeal was pending employer and insurer asked for a remand to the Industrial Commission to enable them to move for a new hearing on the merits based upon the grounds of newly discovered evidence. In their motion to this court they requested an order directing that said remand be absolute if the application to the Industrial Commission were granted and an order directing that the proceedings upon such application be certified to this court as a part of the return if the application were denied. This court granted the remand but the Industrial Commission after due consideration denied the motion for a new hearing. The order was accompanied by opinion.

M. S. A. 176.461 provides that the commission may set aside an award for cause. Rule 29, Rules of Practice Before Industrial Commission, states what the petition shall set forth in detail. This court in Elsenpeter v. Potvin, 213 Minn. 129, 132, 5 N. W. (2d) 499, 501, 12 Minn. W. C. D. 366, 369, indicated that the words "for cause" mean "good cause; that is, some such cause as fraud or surprise so that, in the exercise of sound judicial discretion, the award should be vacated and a new hearing had. * * * It was not the purpose of [Mason St. 1927] § 4319 [§ 176.461] to permit repeated litigation * * *."

The motion for a rehearing upon the grounds of newly discovered evidence was renewed at the time of the oral argument before this court. Under the statute, the granting of a rehearing rests in the discretion of the Industrial Commission. Whether there exists sufficient cause to justify vacation of award ordinarily rests in the sound discretion of the commission. See, Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526, 15 Minn. W. C. D. 165; Guptill v. Conlon

Const. Co. 239 Minn. 185, 58 N. W. (2d) 264, 17 Minn. W. C. D. 298; Wallace v. Leitzen, 243 Minn. 481, 68 N. W. (2d) 372; Glass v. State Dept. of Highways, 211 Minn. 179, 300 N. W. 593, 12 Minn. W. C. D. 124; Stepan v. J. C. Campbell Co. 228 Minn. 74, 36 N. W. (2d) 401, 15 Minn. W. C. D. 472. After due consideration of the motion, we conclude that the order of the Industrial Commission must be sustained.

■■■ This appeal presents the question whether the record contains sufficient competent evidence to sustain the findings of the Industrial Commission that permanent total disability exists.

As this court has often said it is the function of this court in reviewing a decision of the Industrial Commission to determine whether the evidence is such that the commission might reasonably have come to the conclusion which it did. We have said repeatedly that the findings will not be disturbed unless they are manifestly contrary to the evidence or unless consideration of the evidence and inferences permissible therefrom clearly requires reasonable minds to adopt a contrary conclusion. The policy of this court in reviewing the findings of the Industrial Commission is not to determine whether on the facts the decision of the commission is correct or even preferable to another, but, rather, only to determine whether the findings have sufficient basis of inference reasonably to be drawn from the facts. See, Schwerzler v. Frankamp, 255 Minn. 95, 95 N. W. (2d) 503.

We are especially concerned here with the interpretation and effect of § 176.13(a, b, c), which provides:

"(a) If an employee who has a physical impairment from any cause or origin incurs a subsequent disability by injury arising out of and in the course of his employment resulting in compensation liability for permanent or temporary partial or total disability that is substantially greater by reason of the combined effects of the pre-existing impairment and subsequent injury than that which would have resulted from the subsequent injury alone in the absence of the pre-existing impairment, the employer or his insurance carrier shall in the first instance pay all compensation provided by this chapter, but such employer or his insurance carrier shall be reimbursed from the special

compensation fund for all compensation subsequent to those payable for the first 104 weeks of disability, except that if the subsequent injury alone results in permanent partial disability the employer or his insurer shall not be reimbursed for that part of the compensation payable therefor as may be in excess of the first 104 weeks as provided by section 176.101, subdivision 3 (sections 1-42).

"(b) If the subsequent injury of such an employee shall result in the death or permanent partial or total disability of the employee and it shall be determined that either the injury, death or disability would not have occurred except from pre-existing physical impairment, the employer or his insurance carrier shall in the first instance pay the compensation prescribed by this chapter, but he or his insurance carrier shall be reimbursed from the special compensation fund for all compensation payable in excess of 104 weeks.

"(c) In order to qualify under this section for reimbursement from the special compensation fund, the employer must have qualified with the provisions of this chapter as to insurance or self-insurance as provided for by section 176.181, subdivisions 1 and 2, and except as to an employee whose pre-existing physical impairment is a permanent partial disability as scheduled in section 176.101, subdivision 3 (section 1-38), must register with the industrial commission, in advance of any subsequent injury, under rules prescribed by the industrial commission, the names of his employees with a pre-existing physical impairment, together with satisfactory evidence of such impairment, and for whom he may want to claim reimbursement for any compensation paid in event of a subsequent injury or death. At their option, the employer, employee or the commission may make application to the director, division of vocational rehabilitation of the department of education who shall then certify to the industrial commission declaring the existence or nonexistence of a physical impairment, and if the director shall certify to the existence of a physical impairment, that certification shall be acceptable as evidence of such impairment but shall not be determinative thereof. In the event of a subsequent injury or death for which reimbursement is claimed, the employer or his insurer shall file with the industrial commission written notice of intention to claim

reimbursement within 52 weeks after the occurrence of the subsequent injury in accordance with rules and regulations to be established by the industrial commission. Upon finally determining that an employer or his insurer is entitled to reimbursement hereunder, compensation shall thereafter be payable out of the special compensation fund."

The findings of the referee were affirmed by the commission and were to the effect that employee suffered an accidental injury May 6, 1946, and as a result thereof received compensation from May 7, 1946, to June 3, 1954, a period of 416 2/3 weeks of permanent total disability at the weekly rate of $24 and the total sum of $10,000; that on October 4, 1955, employee suffered an injury to his back while under a contract of hire with Meadowbrook Manor, Inc.; that employee made a compromise settlement with said employer and its insurer and an award on stipulation signed by the referee was filed December 16, 1956, with the commission whereby he was awarded 127½ weeks of temporary total disability at the rate of $38.13 per week totaling $4,362.75; that employee again suffered a personal injury on June 8, 1957, while in the employ of Viking Tool & Die Company, and that by reason of the physical impairments resulting from said injuries the employee is permanently and totally disabled and has been so totally disabled from November 19, 1957, the date that his temporary total disability ceased, as a result of the last injury on June 8, 1957, to the date of the last hearing before the referee on June 30, 1958, a period of 30 1/3 weeks, employee being still so disabled on that date.

Other findings by the referee are that Viking Tool & Die Company did not register with the Industrial Commission the name of employee setting forth his preexisting physical impairments resulting from his accidental injury of May 6, 1946, and his personal injury of October 4, 1955, prior to June 8, 1957, the date of the personal injury sustained while in its employ as provided by L. 1957, c. 908 (M. S. A. 176.13); that employer did not file its notice of claim for reimbursement with the Industrial Commission as provided by § 176.13 until June 6, 1958.

Section 176.13(d) states that "physical impairment" means any

physical or mental condition which is or is likely to be a hindrance or obstacle to obtaining employment.

This court discussed the term "previous disability" which was used in the act prior to 1957.[4] The 1957 amendment uses the term "physical impairment" and defines it, and it therefore appears clear that the employee's head and back injuries and the conditions resulting therefrom were a continuing obstacle to his obtaining employment and therefore constituted a physical impairment under the statute. This being so the employee was a candidate for registration. The amendment by L. 1957, c. 908, became effective April 30, 1957.

The 1957 amendment was undoubtedly intended to encourage the employment of physically handicapped persons by relieving employers of part of their liability for compensation through transferring part of such liability to the special compensation fund. It is to be noted that such relief to employers was predicated upon compliance by the employer with two conditions precedent: First, that the employer or his insurer shall "in the first instance" pay all compensation provided by the act (§ 176.13[a, b]); and, second, "In order to qualify under this section for reimbursement from the special compensation fund, the employer * * * must register with the industrial commission, *in advance of any subsequent injury,* under rules prescribed by the industrial commission, the names of his employees with a pre-existing physical impairment, * * *." (Italics supplied.) § 176.13(c). The employer in this case met neither of these two conditions precedent.

Employer and insurer argue that there were no rules prescribed by the commission as provided by § 176.13(c) and thus employer could not have been registered.

Following public hearings, formal rules were adopted February 6, 1958. The testimony, however, shows that registrations were actually received as early as July 19, 1957, and the commission states that in taking cognizance of its own procedures it had provided for receiving

---

[4]Skoog v. Schmahl, 198 Minn. 504, 270 N. W. 129, 9 Minn. W. C. D. 309; Rikala v. Rundquist Const. Co. 247 Minn. 401, 77 N. W. (2d) 551, 19 Minn. W. C. D. 18; Senske v. Fairmont & Waseca Canning Co. 232 Minn. 350, 45 N. W. (2d) 640, 16 Minn. W. C. D. 242.

registrations from the effective date of the act. All the employer had to do after April 30, 1957, was to register the name of employee together with satisfactory evidence of his physical impairment as provided in § 176.13(c). The record clearly indicates that employer made no attempt at such registration.

Employer and insurer claim that registration was excused upon the further ground that the Industrial Commission had in its files, at the time of the 1957 amendment, full particulars concerning the employee's preexisting physical impairments. The statute itself (§ 176.13[c]) provides for no such substitute or excuse. Its language is clear and mandatory.

■ The referee, and later the commission, refused to consider the employer registered pursuant to statutory requirements, citing and relying upon Bielke v. American Crystal Sugar Co. 206 Minn. 308, 288 N. W. 584, reaching the conclusion that procedural rules cannot and do not change substantive law and that the commission was interpreting a statute in the instant case where substantive law requires registration. This court in the Bielke case said (206 Minn. 312, 288 N. W. 586):

"* * * It is axiomatic that an administrative body can neither make nor change substantive law. It may adopt administrative rules, but in doing so cannot change existing, or make new, law.

* * * * *

"* * * The command of the substantive remains binding notwithstanding failure of the commission (at the time the matter had to be decided by the appeal board) to set up the administrative mechanism as directed."

The procedural requirements in the statute to regulate registration cannot qualify or limit the substantive law unless clearly so stated or implied. It does not appear from the record that the employee's physical impairments were excepted from registration.

The situation here is different from that found in Thomas v. Ramberg, 245 Minn. 474, 73 N. W. (2d) 195, where the making of rules on the part of the commission was held mandatory. The making

of the rules involved in that case were necessary to make provision for the substantive rights of the parties, but such is not the case here.

Under the circumstances, the employer, having failed to register, cannot resort to the state's special compensation fund.

■ The commission determined that employee was entitled to compensation covering 22 weeks of temporary total disability at the weekly rate of $45 in the sum of $990 and 44 weeks of permanent partial disability at the same weekly rate in the sum of $1,980, representing a 20-percent permanent partial disability of the left leg, or total compensation in the sum of $2,970, with interest, costs, and disbursements; and determined that employer and insurer shall upon the payment of the foregoing compensation continue to pay employee compensation representing permanent total disability at the same weekly rate of $45, said payments to continue as the employee's disability may warrant until compensation in the total sum of $18,000 has been paid and that thereafter such payments as the employee may be eligible for under old age and survivors' insurance benefits shall be credited to the compensation payable for permanent total disability, subject to the provisions and limitations of the Workmen's Compensation Act. It was further determined that the employer and insurer are not entitled to any reimbursement from the compensation fund by reason of the combined effects of the preexisting physical impairments and his subsequent injury, not having registered as provided under L. 1957, c. 908, and that the claim petition be dismissed as to the state treasurer, custodian of the special compensation fund. The record clearly sustains the commission's findings of total disability and that the employer and insurer have the sole liability. The order of the commission is affirmed, and employee is allowed $300 attorneys' fees over and above his costs and disbursements.

Affirmed.