289 So.2d 626

**UNEXCELLED MANUFACTURING COR-PORATION, a corporation**

**v.**

**James RAGLAND.**

**Civ. 245.**

Court of Civil Appeals of Alabama.

Jan. 2, 1974.

Rehearing Denied Jan. 30, 1974.

58

Simmons, Torbert & Cardwell and William D. Hudson, Gadsden, for appellant.

Robert H. King, Gadsden, for appellee.

HOLMES, Judge.

We review this matter by writ of certiorari from the Circuit Court of Etowah County, Alabama. Suit was instituted by appellee against appellant-employer under the Alabama Workmen's Compensation Law, Ala.Code, Tit. 26, § 253 et seq. (1940). The trial court entered a finding for appellee-plaintiff of permanent partial disability under Tit. 26, § 279(C)(6), and made awards pursuant thereto.

Tendencies of the evidence indicate the following:

Appellee was employed by appellant in its manufacturing business. Appellee's job was to push a wheelbarrow and keep a cupelo charged or filled up with steel. He also had to keep the hold where the cupelo rested clear of any iron that might fall into it. On the occasion in question, appellee was in the hold to clear it of iron when the bucket which was hanging over the cupelo fell and injured him. The bucket pinned appellee in the hold and came to rest on his back. His back was burned and scratched. He testified that his back was injured and hurts all the time, and that all the skin on the left side of his face was pulled off. Additionally, appellee testified that his right ankle was completely crushed and cut. Appellee testified he cannot flex his ankle and can flex only two toes. The trial judge, during the hearing, specifically examined the injuries complained of.

Appellee further described his condition to the court as follows: that his leg swells and hurts all the time; that he can only walk on it about fifteen minutes and then has to stop; his head hurts all the time and it jumps and moves; he cannot sleep at night and can be hollering but no sound comes out; and that he shakes all the time. Appellee also testified that the lower part of his back hurts; that in the mornings it will be tight and he has to use his crutches to get around for awhile.

Appellee, immediately after the accident, was taken to the hospital and was treated there by Dr. Cruit who testified that appellee had a compound fracture of his right ankle with a dislocation of his main ankle

bone. The doctor put the bone back in place and prescribed a cast. Appellee kept the cast on for some six months. Dr. Cruit testified that appellee has a complete fusion of his ankle, that is, a complete stiffness with no motion in his ankle joint at all. The fusion was done by the injury itself and not operatively. The doctor, when asked to give a percentage of disability to the limb, estimated that appellee had a 50% impairment of the lower extremity on the right side. The doctor stated his estimate was based on a completely stiff ankle; that his estimate was primarily a loss of joint motion. When asked to assign a percentage of disability to the entire body, Dr. Cruit stated:

"So he certainly would have some entire body disability, but what percentage of the entire body I couldn't say."

On cross examination, Dr. Cruit testified that in his opinion appellee did not have any permanent physical disability to any portion of his body other than his ankle. He testified that to his knowledge, he did not treat appellee for any injury other than the ankle. He x-rayed appellee's back and such x-rays were negative in regard to injury.

Further tendencies of the evidence reveal that appellee has attempted to work at two different places since the accident. He worked one day at Tony's Barbecue washing dishes but couldn't continue working because his ankle would swell up and pain him. He attempted to work at a construction job but only stayed there two days because his right leg and ankle hurt and would swell up. It appears that he has not been employed otherwise since the time of the injury.

Appellee was approximately eighteen years old at the time of the accident. He had a tenth grade education; had practiced no skill or employment prior to his going to work for appellant; and worked for appellant approximately two weeks prior to the injury.

There was testimony by John R. Newman, the manager of the Alabama State Employment Service in Gadsden. Newman testified he had been in his position for thirty-eight years, and that he was familiar with the employment in the area. He stated that he had interviewed the appellee as to his work experience, training, and observed the injury. He said he noted that appellee had a stiff ankle, walked with a severe limp, and got about very slowly. Newman was then asked and replied as follows:

"Q Let me rephrase the question so we will know where we stand, Mr. Newman. Based on his work history, his training, his educational background and based on the injuries sustained by him and employment in this area and your knowledge of it can you relate to the court based on all these factors some percentage of his inability to obtain a job in this area?

.    .    .    .    .    .

"A After completing my interview with this fellow and taking into consideration his work experience, his training, his lack of ability to walk, stand or sit for any period of time it is my opinion that he has a ninety-five to a hundred per cent employability limitation in any type of work to his entire body which might be available to him."

Newman stated that appellee is practically unemployable in any job in the area, and that in his opinion, he would not be employable in any industry of any type—any caliber—small or large. On cross examination, Newman said:

"I am not trying to give or don't intend to give any physical limitations or his physical ability at all. I am only trying to evaluate his employability limitation from what he —"

From the above evidence, the trial court made the required finding of fact and con-

clusion of law in accord with Ala.Code, Tit. 26, § 304. The court found the appellee-plaintiff to be permanently and partially disabled under the provisions of Ala. Code, Tit. 26, § 279(C)(6); that the injuries sustained to the appellee's right leg, ankle, and foot are such that the effects extend to the body as a whole; that these injuries are accompanied by other physical disabilities including appellee's ability to walk, stability and balance, swelling of ankle and leg, pain, and walking in a peculiar manner which results in a twisting-type motion of appellee's back. The trial court also found that appellee's occupational ability is limited to manual labor which he can no longer do; that appellee had a mother and five brothers and sisters dependent upon him for support; that appellee attempted to work at two different jobs but could not due to his injuries; that appellee suffered 80% permanent partial disability to his body as a whole and 80% permanent decrease earning capacity as a direct and proximate result of the injury. The trial court found appellee's injuries to be far more extensive than a leg or ankle injury and that all of the above rose out of the course of employment with the appellant-defendant.

The trial court awarded fifty-six weeks of temporary total disability and awarded $41.80 per week for that period. The figure $41.80 represented 55% of the average weekly wage of $76.00. The court further awarded two hundred seventy-five weeks of permanent partial disability. The amount of this award was $33.40 per week for the said two hundred seventy-five weeks.

Appellant argues several assignments of error urging that the injury to appellee should only be compensated as provided for a scheduled member in Alabama Code, Tit. 26, § 279(C)(1); that there is no evidence to support a finding of permanent disability other than the injury to the ankle; that there is no evidence to support a finding that at the time of the injury, the appellee had his mother and five brothers and sisters totally dependent on him; that

the preponderance of the evidence is against the finding of the trial court; that the trial court erred in its computation of appellee's weekly earnings; that the trial court erred in finding that appellee was limited in his occupational ability to perform manual labor; that the testimony of Newman was improper and should not have been considered by the court.

■ The rule is well established that on certiorari to review workmen's compensation cases, we will not review the weight or preponderance of the evidence, but will look to see if there is any evidence to support the facts found by the trial court. Pinto Island Metals Co. v. Edwards, 275 Ala. 351, 155 So.2d 304; Dale Motels, Inc. v. Crittenden, 50 Ala.App. 251, 278 So.2d 370. When there is any legal evidence, or reasonable inference therefrom to support the facts found by the trial court, such findings are conclusive and will not be disturbed on appeal. Kroger Co. v. Millsap, 280 Ala. 531, 196 So.2d 380; Aluminum Workers International v. Champion, 45 Ala.App. 570, 233 So.2d 511.

Assignments of error of appellant's able counsel that Ala.Code, Tit. 26, § 279(C)(1), should have been applied because there was no evidence of permanent partial disability to the body as a whole is, to this court, without merit.

As set forth above, appellee testified that he experiences pain; is unable to walk for more than fifteen minutes; his leg and ankle swell and pain him; his stability and balance are affected; his head hurts and jumps and twitches; he cannot sleep; he sometimes hollers but no voice comes out; and his back hurts. Appellant contends this evidence is not supported by the expert medical testimony presented, but only from the appellee alone.

■ We note that in a workmen's compensation case the testimony of experts is not conclusive on the trial court even though such testimony may be uncontroverted. See Kroger Co. v. Millsap, *supra*;

Dale Motels, Inc. v. Crittenden, *supra*. We have also recently held that testimony of the claimant himself is of probative value to the trial court in determining disability even in the absence of medical testimony. See Stewart v. Busby, 51 Ala.App. 242, 284 So.2d 269.

■ The evidence presented, as we view it, is sufficient to show that the injury to appellee had effects which extended beyond the injury to the ankle and affected his whole body. See Warrior Stone and Contracting Co. v. DeFoor, 241 Ala. 227, 2 So.2d 430; Dale Motels, Inc., *supra*. Our courts have held that even though the injury is to a scheduled member, if the *effects of such injury* extend to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, then the employee is not limited in his recovery to the amount allowed for the member in the schedule. Bell v. Driskill, 282 Ala. 640, 213 So.2d 806. See also Dale Motels, Inc. v. Crittenden, *supra,* for further discussion (a case in which the facts are very similar to the case now before us). We therefore cannot hold the trial court erred in applying Ala.Code, Tit. 26, § 279(C)(6), instead of § 279(C)(1).

As to appellant's assignments of error 29 and 30, urging that the trial court erred in interpreting the remarks of the doctor as to appellee's ability to stand, squat, stoop, lift, etc., we find no merit. Even if the evidence shows appellee can stoop or squat, there is sufficient evidence otherwise presented and set out herein to enable the trial judge to find permanent partial disability and a consequent decrease in earning capacity.

Appellant's assignment of error 24 contests the trial court's method of computation of appellee's earnings. The trial court apparently computed the employee's wages by using the second alternative as provided by Ala.Code, Tit. 26, § 279(G), as set out herein below.

Ala.Code, Tit. 26, § 279(G), provides the means of computing average weekly earning as follows:

"(G) Average Weekly Earnings Basis of Benefits.

"Compensation hereunder shall be computed on the basis of the average weekly earnings. Average weekly earnings shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury divided by fifty-two; but if the injured employee lost more than seven consecutive calendar days during such period although not in the same week, then the earnings for the remainder of such fifty-two weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained. Where by reason of the shortness of the time during which the employee has been in the employment of his employer, or the casual nature or terms of the employment, it is impracticable to compute the average weekly earnings as above defined, regard shall be had to the average weekly amount which during the fifty-two weeks prior to the injury was being earned by a person in the same grade, employed at the same work by the same employer, and if there is no such person so employed, by a person in the same grade employed in the same class of employment in the same district. Wherever allowances of any character made to an employee in lieu of wages are specified as part of the wage contract, they shall be deemed a part of his earnings."

■ Appellant urges that the third alternative involving shortness of time of employment should have been used, whereby computation would be based upon the average weekly amount of a person employed in the same grade, at the same amount, by the same employer. While the evidence showed that appellee had worked only approximately two weeks for appellant at $1.90 per hour for a forty-hour week, we cannot say that in this instance the trial court erred to reversal in its method of computation.

■ We particularly note that the above quoted section refers to a result which is "just and fair to both parties." The tenor of the Alabama decisions in cases dealing with this section seems to be that if the formulas set forth are impracticable to apply in a particular case so as to arrive at a fair and just result to both parties, much must be left to the trial court's sound judgment and judicial discretion. See Aluminum Workers International v. Champion, *supra*; Willis v. Storey, 268 Ala. 205, 105 So.2d 128.

In this instance, we cannot hold that the trial court abused its discretion or made a finding which was not just and fair to both parties.

Appellant, by assignments of error 42, 44, 45, and 46, asserts that the trial court erred to reversal in allowing Mr. Newman, the manager of the local state employment service, to testify as previously set out herein. Appellant specifically asserts that Mr. Newman's testimony was inadmissible and the court erred to reversal in allowing his testimony in that it was based on hearsay evidence and other incompetent evidence. We cannot agree.

We note that Minnesota, from whose statutes our own Workmen's Compensation Law is derived, has dealt with this subject and allowed testimony of the same nature. In Petter v. McKee, Inc., 270 Minn. 362, 133 N.W.2d 638, the Minnesota Supreme Court allowed testimony by a supervisor for the Minnesota State Department of Employment Security who stated that notwithstanding the testimony of two doctors to the effect that employee had no more than 35–40 percent disability in his back, he was unemployable. The court cited extensively from Lee v. Minneapolis St. Ry. Co., 230 Minn. 315, 41 N.W.2d 433, which provides as follows:

"If reasonably stable employment is not available for an employe by reason of certain injuries which have crippled him physically or neurologically, evidence of that fact—through the testimony of an experienced employment supervisor—is both material and relevant in determining whether the employe's disability is of such a character that he has no reasonable likelihood, *while such disability continues,* of being able to obtain and pursue an income-yielding occupation with reasonable continuity as contemplated by M.S.A. § 176.11, subd. 5. . . . The purpose of the testimony is not to establish the nature of the disability or its duration, but to determine, assuming the existence of certain injuries, whether employment is available for a person so handicapped. . . ." (230 Minn. at 319, 41 N.W.2d at 436)

■ As we view Mr. Newman's entire testimony in context, it related to the appellee's employability or, put another way, his decreased earning capacity. The conclusions of Mr. Newman were based, as set out in the record, on his personal observations, personal interview and knowledge of job availability in the local job market through years of experience in the employment service of the State of Alabama. To allow such testimony into evidence is, to this court, permissible.

Appellant, in assignments of error 27 and 28, urges that the trial court erred in

**64**

its finding of 80% loss of earning capacity and that appellee was capable of performing only manual labor.

■ The determination of a percentage of permanent partial disability is for the trial court. The court should reach its conclusion from all the evidential facts and circumstances. See Semmes Nurseries, Inc. v. McVay, 279 Ala. 42, 181 So.2d 331. In the case at bar, we cannot say there was insufficient evidence for the trial court's allowance of 80% permanent partial disability, nor for its finding that appellee was capable of only manual labor. Appellee is a nineteen year-old who has only a tenth grade education and has only worked as a manual laborer.

■ Appellant's assignment of error 26 urges that there was no evidence to support a finding by the trial court that, at the time of injury, appellee had his mother and five brothers and sisters dependent upon him. The assignment is well taken. There is no competent evidence in the record as to dependency. This however is, in this instance, error without injury. Ala. Code, Supreme Court Rule 45. Tit. 26, § 279(C)(6), provides that: "In all other cases of permanent partial disability not above enumerated, the compensation shall be fifty-five percent . . . .". This is the percentage the court awarded without regard to any possible dependency. In other words, the trial court made no allowance for any dependents in its award.

Having considered all assignments of error properly presented, the judgment of the trial court is due to be affirmed.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.