PER CURIAM.
James Marshall Murray obtained a judgment against his employer, International Paper Company, for an on-the-job injury covered under the Alabama Workmen’s Compensation Act. The Court of Civil Appeals reversed the judgment, holding that Murray failed to give notice of the injury to his employer within five days, as required by Code 1975, § 25-5-78. Although finding sufficient evidence that Murray gave actual notice within ninety days — the outer limit for notice under the statute — the court held that this failed to meet the statutory requirement. International Paper Co. v. Murray, 490 So.2d 1228 (Ala.Civ. App.1984).
We granted certiorari and reversed the judgment of the Court of Civil Appeals. Ex parte Murray, 490 So.2d 1230 (Ala. 1984). Noting that the statute contained a “saving clause” and that the trial court had found in Murray’s favor, we remanded the case with instructions to the Court of Civil Appeals to determine whether the evidence supported a finding of “good reason,” within the meaning of the saving clause, for failure to notify. We further directed that if the evidence was insufficient for such a finding, then the court should determine the precise date that notice was given within the five-to-ninety days range and impose the sanction of nonpayment of benefits up to that time. We also instructed the court to address those issues presented to it but pretermitted on its initial review.
On remand, International Paper Co. v. Murray, 490 So.2d 1234 (Ala.Civ.App.1985), the Court of Civil Appeals found that there was not good reason for Murray’s failure to notify International Paper within five days and properly remanded the case to the trial court to determine the precise date when notice was given. The Court of Civil Appeals also addressed the issue of whether the weekly premium value of medical, hospitalization, and life insurance policies should be included in the computation of the employee’s average weekly wage to determine benefits. The trial court had included the $10.80 weekly premium value of these policies, but the Court of Civil Appeals reversed and remanded the issue.
Murray then filed the present petition for writ of certiorari, which we granted. We affirm that portion of the judgment of the Court of Civil Appeals relating to the *1240 “good reason” issue. However, we reverse that portion of that court’s judgment excluding employer-paid premiums on insurance policies from the computation of the worker’s average weekly wage.
The statute that prescribes the method for computing workmen’s compensation benefits states, in pertinent part:
“Whatever allowances of any character made to an employee in lieu of wages are specified as part of the wage contract shall be deemed a part of his earnings.”
Code 1975, § 25-5-57(b). Therefore, under § 25-5-57(b), the term “earnings” is comprised of three elements: (1) allowances of any character; (2) made to the employee in lieu of wages; and (3) specified as part of the wage contract. It is undisputed that in this case the fringe benefits were not provided gratuitously to the employee and that they were specified as part of the wage contract. Consequently, the only issue here is whether these employer-paid fringe benefits constitute “allowances of any character,” which the legislature mandates must be treated as part of an employee’s earnings.
In construing this statute to determine whether such benefits should be included in the computation, the Court of Civil Appeals relied heavily on Morrison-Knudsen Construction Co. v. Director, Office of Workers’ Compensation Programs, United States Department of Labor, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983), in which the United States Supreme Court construed the term “wages” in the Longshoremen’s and Harbor Workers’ Compensation Act, 33 U.S.C. §§ 901-950 (1978). According to § 902(13):
“ ‘Wages’ means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, including the reasonable value of board, rent, housing, lodging, or similar advantage received from the employer, and gratuities received in the course of employment from other than the employer.”
33 U.S.C. § 902(13) (1978). In Morrison-Knudsen, the Supreme Court held that this definition excludes employer contributions to union trust funds for health, welfare, pensions, and training. According to the Court, such contributions are not an “advantage” similar to board, rent, housing, or lodging under the statute because the latter items have a present value that can be readily converted into a cash equivalent; with the trust fund contributions, there is no direct relation between the size of the contributions and the size of the benefits to the employee arising from the trust fund. The Court also warned that an expanded definition of “wages” would disrupt the process for prompt compensation by making the computation stage another focus of challenge. Our Court of Civil Appeals agreed, concluding that Morrison-Knudsen served as a “useful precedent” because the statutes were similar in nature and the “similar advantage” language of the federal statute was “apparently synonymous” with the “whatever allowances” phrase of the Alabama statute.
The two phrases are not synonymous. The language of Code 1975, § 25-5-57(b), is much broader than that of 33 U.S.C. § 902(13). Section 25-5-57(b) includes in “earnings” allowances of any character. By contrast, § 902(13), as construed in Morrison-Knudsen, includes in “wages” only those items which, like board, rent, housing, and lodging, can be easily converted into a cash equivalent. In this case the employer-paid premiums for medical, hospitalization, and life insurance coverage for the employee can be readily converted into a cash equivalent. Instead of providing the fringe benefits, International Paper could have added $10.80 to Murray’s paycheck for him to provide his own fringe benefits. Thus, there is a direct relationship between the employer’s contribution and the benefit eventually obtained by the worker. Finally, the Morrison-Knudsen Court’s warning about computation disputes overlooks the likelihood that information on the cost of fringe benefits is routinely maintained by the employer for tax purposes and can be ascertained through generally accepted accounting principles and procedures. As the *1241 lone dissenter in Morrison-Knudsen, stated, “it is better to be roughly right than totally wrong.” Morrison-Knudsen, 461 U.S. at 642, 103 S.Ct. at 2055, 76 L.Ed.2d at 208. We, therefore, hold that under the Alabama statute, § 25-5-57(b), these employer-paid fringe benefits constitute “allowances of any character” and are includable in the computation of the employee’s average weekly wage.
The Court of Civil Appeals also found comfort in Professor Larson’s The Law of Workmen’s Compensation, § 60.12(b) (Supp.1983), which supports the Morrison-Knudsen decision. Professor Larson states that the primary reason for calculating the average weekly wage is to determine what has in fact been lost. According to him, fringe benefits do not “form part of the standard of living ... and are not in any meaningful sense lost as the result of the death or injury.” Larson, supra, at 219. First, Larson argues that because the value of fringe-benefit protections is not realized until an event triggers the compensation, the value cannot then be part of the pre-event standard of living, which the compensation plan is meant to maintain. Second, he argues that nothing in fringe benefits is really lost if the worker is injured or killed; he says that, in fact, the very event will trigger payment of benefits, which results in a gain of the face value of the insurance plan.
Professor Larson’s arguments are not persuasive. First, the proposition that employer-paid fringe benefits do not form part of the standard of living is shortsighted. There is a discernible economic value to the worker in having someone else pay his or her insurance premiums. If forced to purchase the same insurance out of take-home wages, the employee reduces disposable money income, which, of course, affects his or her standard of living. Second, the proposition that fringe benefits are not really lost as a result of death or injury is equally shortsighted. A compensable injury in Alabama does not entitle an employee to unlimited care, but to reasonably necessary treatment incident to the job-related injury, with the employer selecting the physician. See Code 1975, § 25-5-77. When a compensable injury impairs an employee’s ability to earn a wage and thus discontinues fringe benefits, the worker certainly suffers the substantial loss of the medical and hospital insurance for injuries and sicknesses unrelated to the employment injury. Furthermore, in an injury case, not involving death, the employee does lose the fringe benefit of life insurance. Therefore, if the computation is to determine what has been lost, then these fringe benefits must be included.
We are required to interpret statutory language to give effect to the legislative intent. To read the broad term “allowances of any character” to exclude these insurance premiums is unreasonable, notwithstanding Professor Larson’s criticism of courts which disagree with him. If we are wrong in our view of what the legislature meant, it can correct us by a simple amendment to the statute.
We affirm the judgment of the Court of Civil Appeals in regard to the notice issue. We reverse the judgment regarding the computation of Murray’s average weekly wage and remand.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, FAULKNER, JONES, SHORES, BEATTY and HOUSTON, JJ., concur.
ALMON and ADAMS, JJ., not sitting.