70 So.3d 1203 (2007)
VINTAGE PHARMACEUTICALS, LLC
v.
Thomas HAYES.
2060284.
Court of Civil Appeals of Alabama.
September 14, 2007.
Rehearing Denied November 2, 2007.
William L. Middleton of Eyster, Key, Tubb, Roth, Middleton, & Adams, LLP, Decatur, for appellant.
*1204 L. Thompson McMurtrie of Hess & McMurtrie, P.C., Huntsville, for appellee.
BRYAN, Judge.
Vintage Pharmaceuticals, LLC, appeals from a judgment of the trial court awarding permanent-total-disability benefits to Thomas Hayes. Because we conclude that the trial court erred in compensating Hayes for an injury to the body as a whole rather than for an injury to a scheduled member under § 25-5-57(a)(3), Ala.Code 1975, we reverse and remand.
Hayes worked for Vintage as a custodian. On July 13, 2005, Hayes sustained an open fracture of his right calcaneus, or heel bone, in a forklift accident at work. In the accident, Hayes severed a portion of his calcaneus, which was surgically reattached by an orthopaedic surgeon. Soon after that surgery, Hayes developed an infection in his right foot that required multiple irrigation-and-debridement procedures. In August 2005, a plastic surgeon grafted muscle and tissue from Hayes's back in a procedure to reconstruct Hayes's right foot.
In September 2005, Hayes sued Vintage, seeking workers' compensation benefits for his right-foot injury. Following a trial at which Hayes testified, the trial court entered an judgment finding that Hayes had sustained a nonscheduled injury to the body as a whole and that Hayes was permanently and totally disabled as a result of that injury. In its judgment, the trial court stated:
"Hayes' work-related right foot injury has left his right foot with severe limitations, including range of motion, affecting his ability to walk. Hayes also experiences a lack of feeling in his right foot, particularly on the bottom of his foot, also affecting his ability to walk. Additionally, he has shooting pains on the front top of his right foot. [Hayes's physician] ordered a boot for his right foot, and a brace for his left foot, both of which Hayes wore in open court. [Hayes's physician] assigned `a 17% foot impairment [which equates to a] 12% lower extremity impairment and [a] 5% whole person impairment.'
"Hayes also has a congenital defect to his left foot. Surgery was performed on his left foot as a child, but it left him with a left foot which turned slightly inward at the toes and rolling to the outside. He walks with a limp, but his left foot never prevented him from working. Before this injury, Hayes had been able to accommodate his left foot defect with a normal right foot, which gave him the stability necessary for balance. The right foot injury, with resultant limited range of motion, and lack of feeling, has taken away Hayes' stability and balance when on his feet. His lack of stability and balance has caused him to fall frequently, so he must use a cane or walker at all times when walking to avoid falling. He uses his right hand to hold a cane and is right-hand dominant.
"Hayes has an almost total lack of control of his right foot if he does not wear a shoe or special boot.... Hayes has difficulty being on his feet more than one hour per day. He finds it necessary to sit or lie frequently throughout the day with his foot elevated at waist level or above to prevent or alleviate pain and swelling."
Section 25-5-81(e), Ala.Code 1975, provides the standard of review in workers' compensation cases:
"(1) In reviewing the standard of proof set forth herein and other legal *1205 issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
"(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence."
Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). "This court's role is not to reweigh the evidence, but to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom." Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 794 (Ala.Civ.App.2002).
On appeal, Vintage first argues that the trial court erred by treating Hayes's right-foot injury as an unscheduled injury to the body as a whole. Vintage argues that Hayes's injury should be compensated pursuant to § 25-5-57(a)(3), Ala.Code 1975, for the permanent partial loss of use of a scheduled member.
In Ex parte Drummond Co., 837 So.2d 831 (Ala.2002), our supreme court restated the test for determining when an injury to a scheduled member should be treated as an unscheduled injury to the body as a whole. Our supreme court stated:
"[I]t was the intention of this Court in adopting in Bell [v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968),] the exception to the workers' compensation schedule to address those instances where the injury to a scheduled member caused such impairment to the body as a whole that the benefits reflected on the schedule were not appropriate. Specifically, the Bell test permitted an injury to a scheduled member to be compensated outside the schedule if the effect of the injury extends to other parts of the body and produces a greater or more prolonged incapacity than that which naturally results from the injury to the specific member....
"We renew our commitment to the policy that underlay the Bell test and that is recognized in the current edition of 4 Lex K. Larson, Larson's Workers' Compensation Law § 87.02 (2001):
"`The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.'
"... [W]e today adopt the language recited above from Larson, Workers' Compensation Law § 87.02, as the test for determining whether an injury to a scheduled member should be treated as unscheduled; therefore, we overrule Bell insofar as it established a different test...."
837 So.2d at 834-35 (footnotes omitted).
In its judgment, the trial court concluded that Hayes's "right foot injury extends to the other parts of his body, and interferes with their efficiency, by affecting his balance and stability, requiring him to use a cane or walker when walking, and necessitating foot elevation throughout the day." Essentially, the trial court awarded compensation to Hayes outside the schedule because, the court concluded, Hayes's right-foot injury affected his body generally. However, to receive compensation outside the schedule, Hayes had to show that *1206 his injury to a scheduled member extended to a nonscheduled part of his body and interfered with its efficiency. 837 So.2d at 834. Hayes has not established that his right-foot injury caused an injury to any particular nonscheduled part of his body. See Boise Cascade Corp. v. Jackson, 997 So.2d 1026 (Ala.Civ.App.2007) (stating that an employee who sustained a foot injury may not recover nonscheduled disability benefits on the basis of complaints of back pain in the absence of a showing that the injury to his foot caused a permanent physical injury to his back). Accordingly, the trial court erred by treating Hayes's injury as a nonscheduled injury to the body as a whole rather than as a scheduled injury pursuant to § 25-5-57(a)(3).
We note also that the trial court's finding that Hayes must "sit or lie frequently throughout the day with his foot elevated... to prevent or alleviate pain and swelling" does not support the trial court's determination of a nonscheduled injury. In Ex parte Drummond Co., the employee stated that he had to elevate his injured knee at night to reduce the swelling. 837 So.2d at 836. The employee argued that "`[t]he simple fact that he has to elevate his knee and take precautions for the swelling meets the criteria [for taking an injury off the schedule] set out in the caselaw of the State of Alabama.'" Id. (quoting the employee's brief). However, the court in Ex parte Drummond Co. concluded that, despite the need to elevate the knee, the occasional swelling of the employee's knee did not qualify as an injury that extended to other parts of the body and produced a greater incapacity than would otherwise result from the injury. 837 So.2d at 836.
In concluding that the Hayes's injury should be treated as a nonscheduled injury to the body as a whole, the trial court cited Dale Motels, Inc. v. Crittenden, 50 Ala. App. 251, 278 So.2d 370 (Civ. 1973). In Dale Motels, the trial court treated the employee's foot injury as an injury to the body as a whole rather than as a scheduled injury. The employee submitted evidence indicating that she experienced considerable pain, that she was unable to stand for more than 30 minutes without her foot swelling, that she needed a cane to walk, that she fell frequently when attempting to walk, and that she was nervous. 50 Ala. App. at 255, 278 So.2d at 373. In affirming the trial court's judgment, this court concluded that "there is some evidence that the effects of the injury have produced a greater interference with the ability to work than would be expected from a simple and uncomplicated loss of the use of a foot." 50 Ala.App. at 256, 278 So.2d at 373 (emphasis added).[1]
In Ex parte Drummond Co., our supreme court overruled Dale Motels insofar as it expanded the Bell test to include vocational disabilities as an effect that will take the injury outside the schedule. 837 So.2d at 834 n. 8. In the present case, the trial court, although acknowledging that Dale Motels had been overruled for expanding the Bell test to include consideration of vocational disabilities, found that Ex parte Drummond Co. did not criticize the "other grounds" cited in Dale Motels for taking the injury off the schedule. According to the trial court, those additional grounds included effects "strikingly similar to those suffered by Hayes," such as being unable to walk without a cane and falling *1207 while attempting to walk. However, as noted, this court's decision in Dale Motels was ultimately based on a consideration of vocational disabilities, a consideration that impermissibly expanded the Bell test. Accordingly, we do not find Dale Motels persuasive authority for removing Hayes's injury from the schedule.
The trial court also cited Unexcelled Manufacturing Corp. v. Ragland, 52 Ala. App. 57, 289 So.2d 626 (Civ.1974), in support of the decision to treat Hayes's injury as one to the body as a whole. In Ragland, this court affirmed the trial court's judgment treating the employee's ankle injury as one to the body as a whole. The employee in that case suffered pain and swelling in his ankle and leg, was unable to walk for more than 15 minutes at a time, experienced difficulty balancing and stabilizing himself, suffered pain in his head and back, and experienced involuntary head movements. 52 Ala.App. at 61, 289 So.2d at 629. The trial court in the present case noted that Hayes, like the employee in Ragland, has difficulty with his balance and stability. However, in Ragland, unlike in this case, evidence indicated that the employee's ankle injury may have caused injuries to nonscheduled parts of the bodythe back and the head. Therefore, the court in Ragland found that there was some evidence indicating that the employee's injury "extend[ed] to other parts of the body, and produce[d] a greater or more prolonged incapacity than that which naturally results from the specific injury." 52 Ala.App. at 62, 289 So.2d at 630.[2] However, in this case, there is no evidence, as there was in Ragland, indicating that Hayes's foot injury extended to a nonscheduled body part.
Because we conclude that Hayes's injury should have been compensated as an injury to a scheduled member pursuant to § 25-5-57(a)(3), we reverse the judgment of the trial court awarding Hayes permanent-total-disability benefits, and we remand the case.[3] Although this result may seem harsh or unfair, the application of the current workers' compensation law to the facts of this case mandates our conclusion. This holding pretermits discussion of the other issue raised by Vintage.
REVERSED AND REMANDED.
PITTMAN, J., concurs.
MOORE, J., concurs specially.
THOMPSON, P.J., and THOMAS, J., concur in the result, without writing.
MOORE, Judge, concurring specially.
I concur in the main opinion's decision to reverse the trial court's judgment and to remand the cause for the trial court to enter a new judgment limiting the employee to permanent-partial-disability benefits as set out in "the schedule," Ala.Code 1975, § 25-5-57(a)(3)a. I write specially to address the perceived harshness or unfairness of applying the schedule to this case.
Before the advent of workers' compensation laws, employees injured in work-related *1208 accidents depended on the common law or the Employers' Liability Act, Title 26, § 326 et seq., Ala.Code 1940, as their exclusive forms of redress. See Reed v. Brunson, 527 So.2d 102 (Ala.1988). In order to recover any compensation from an employer, an employee basically had to prove that the injury resulted from the employer's direct, as opposed to vicarious, negligence. See Fireman's Fund American Ins. Co. v. Coleman, 394 So.2d 334, 341 (Ala.1980) (Jones, J., concurring in the result). In addition, the employer could raise the affirmative defenses of contributory negligence, assumption of the risk, or the fellow-servant doctrine to defeat an employee's claim. Id. As a result, the vast majority of employees injured in work-related accidents received no monetary compensation from their employers. See Samuel B. Horovitz, Injury and Death Under Workmen's Compensation Laws (Wright & Potter Printing Co.1944) (estimating that close to 80% of all injured employees did not receive any compensation from their employers under the common law and Employers' Liability Act).
In 1919, our legislature resolved this issue, and many other problems associated with work-related injuries, by enacting Alabama's first workmen's compensation law, Ala. Acts 1919, Act No. 245, a new method for compensating employees that eliminated fault as a basis for an employer's liability. Id. (imposing liability on the employer for workmen's compensation benefits "without regard to the question of negligence"). Under the new theory of workmen's compensation, the employer's liability is predicated solely on the relationship between the injury and the work so that an employee is entitled to compensation on account of a disabling injury caused by an accident arising out of and in the course of the employment. See Pound v. Gaulding, 237 Ala. 387, 187 So. 468 (1939).
In exchange for the elimination of the fault requirement and the removal of the main barrier to receiving any redress for a work-related injury, an employee surrenders his or her right to full indemnification for the damages sustained due to the work-related injury. See Reed v. Brunson, supra. Instead, the extent of an employee's monetary recovery from an employer is controlled exclusively by the "schedules," see Woodward Iron Co. v. Bradford, 206 Ala. 447, 90 So. 803 (1921), that are now set out in § 25-5-57, Ala. Code 1975.
The schedules generally premise the compensation due an employee on the duration (temporary or permanent) and extent (partial or total) of the loss of earning capacity caused by the work-related injury and the amount of the employee's average weekly earnings. However, the subsection of our current Workers' Compensation Act dealing with permanent partial disability is subdivided into two parts. See Ala.Code 1975, § 25-5-57(a)(3)a. & g. The first part, § 25-5-57(a)(3)a., lists a series of body parts or combinations of body parts and generally establishes that if an employee's injury causes a loss or loss of use of the designated body part, the employee is entitled only to compensation based on two-thirds of his or her average weekly earnings for the corresponding number of weeks. See Ex parte Drummond Co., 837 So.2d 831 (Ala.2002). This list is now known as "the schedule." See id.
The schedule serves the basic purposes of the workers' compensation laws by making certain the compensation payable to an injured employee who suffers an enumerated injury. See generally Leach Mfg. Co. v. Puckett, 284 Ala. 209, 224 So.2d 242 *1209 (1969). By establishing the compensation payable for certain injuries, the schedule eliminates the need for litigation to determine the amount of compensation owed, thus avoiding any delay in payment to the injured employee and further avoiding administrative expenses. Id.
The benefits established in the schedule have historically been less than those available outside the schedule. In cases of injury to only a single member, the original schedule provided an employee 50 percent of his or her average weekly earnings for as little as 11 weeks (for loss of a toe other than the great toe) or as much as 222 weeks (for the loss of an arm). Ala. Acts 1919, Act No. 245, p. 206. On the other hand, nonscheduled permanent-partial-disability benefits would provide an employee the same level of benefits for up to 300 weeks. Id. Even in disastrous cases in which an employee lost both arms or both legs, the schedule provided benefits based on 50 percent of the employee's average weekly earnings for only 400 weeks. Id. On the other hand, nonscheduled permanent-total-disability benefits, also based on 50 percent of an employee's average weekly earnings, could last for as long as 550 weeks. Id. The legislature evidently concluded either that the nature of the injuries covered by the schedule warranted lesser benefits or that the benefits an employee gained from immediate payment and avoidance of litigation costs warranted a reduction in the compensation payable.
When viewed historically, the schedule should be considered a fair exercise of legislative power. From the viewpoint of employees, the schedule replaces an uncertain and prolonged remedy with a method of certain and immediate relief. An employee may have been able to recover more damages under prior law, but only in 20% to 30% of the cases, a risk most employees would not take if given the choice. From the viewpoint of an employer, the schedule provides a predictable and easily determined method for figuring the extent of its liability so that it may readily and routinely absorb those costs. From the viewpoint of society, the schedule avoids litigation and administration expenses, thus reducing the overall cost of workers' compensation, which, in turn, reduces the price of those products and services subject to the "workers' compensation tax." The elimination of extraneous litigation and administrative expenses also benefits society by increasing the funds available for raising wages and creating new job opportunities, both of which stimulate the growth of the economy.
At least two changes in the Alabama workers' compensation laws have raised questions as to the fairness of the amount of scheduled compensation, however. First, in 1975, the legislature deleted any limitation on the number of weeks of compensation payable for a permanent total disability. See Ala. Acts 1975, Act No. 75-86, § 4. After this amendment, permanent-total-disability benefits became payable "during the permanent total disability," Ala.Code 1975, § 25-5-57(a)(4)a., which may, and usually does, last well beyond 550 weeks. However, the basic weekly limits set out in the schedule have never changed. Thus, the Workers' Compensation Act allows an employee receiving permanent-total-disability benefits to recover such benefits for a far greater number of weeks than an employee receiving benefits under the schedule.
Second, in 1985, the legislature limited the amount of weekly compensation benefits available to an employee for a permanent *1210 partial disability to the lesser of $220 or 100% of the employee's average weekly earnings. Ala. Acts 1984, 2d Ex.Sess., Act No. 85-41, § 7, amending Ala.Code 1975, § 25-5-68(a). This limitation applies to scheduled injuries that fall under the permanent-partial-disability subsection. See USX Corp. v. Mabry, 607 So.2d 249 (Ala. Civ.App.1992). On the other hand, permanent-total-disability benefits are limited only by the state's average weekly wage, see Ala.Code 1975, §§ 25-5-57(a)(4)a. and 25-5-68(a), which is currently $682.[4]
After those changes, the difference between the amount of compensation available within and outside the schedule have changed markedly. For example, in this case, if the employee is limited to a 17% loss of use of the foot, he would be entitled to $220 per week for 24 weeks, or a total of $5,280 in permanent-partial-disability benefits.[5] On the other hand, if the employee received permanent-total-disability benefits for his predicted lifetime, he would be entitled to benefits with a present value on the date of the judgment of $306,937.44.
The vast disparity between scheduled and nonscheduled benefits that exists today seems unfair. From the viewpoint of an injured employee, it is unfair that his or her compensation would be so much less for a scheduled injury than for a nonscheduled injury with similar wage-earning ramifications, with the amount hinging on such arbitrary factors as the location of the injury or the degree and constancy of pain. From the viewpoint of the employer, it is unfair that an employee with a nonscheduled injury receives so much more than an employee with a scheduled injury and that reserves and settlements must account for the possibility of a nonscheduled award. Most importantly, from the viewpoint of society, the disparity has undermined the supporting principles behind the schedule, resulting in exceptions to the exclusivity of the schedule. See Ex parte Drummond Co., 837 So.2d at 837-38 (Moore, C.J., concurring specially). See also Masterbrand Cabinets, Inc. v. Johnson, 984 So.2d 1136 (Ala.Civ.App.2005), aff'd, Ex parte Masterbrand Cabinets, Inc., 984 So.2d 1146 (Ala.2007). Those exceptions render the amount of compensation due uncertain and subject to prolonged and expensive litigation, see, e.g., Shoney's Inc. v. Rigsby, 971 So.2d 722 (Ala.Civ.App.2007); Chadwick Timber Co. v. Philon, 10 So.3d 1014 (Ala. Civ.App.2007); Boise Cascade Corp. v. Jackson, 997 So.2d 1026 (Ala.Civ.App. 2007); and General Elec. Co. v. Baggett, 1 So.3d 1015 (Ala.Civ.App.2007), leading to escalating workers' compensation costs and the diversion of funds to purely administrative expenses, leading to higher prices and less economic growth.
With that said, it is not the function of this court to pass on the fairness of a statute. Ivey v. State, 821 So.2d 937 (Ala. 2001). Any complaints regarding the harshness or the unfairness of the schedule should be directed to the legislature, which is the body that created this remedy and which is the only body that can address *1211 its perceived deficiencies. Until the legislature amends the law, it is our duty to apply the statute as written. Id.
In this case, the employee asserts that the judgment of the trial court should be affirmed because, he says, the injury to his right foot extends to and impairs other parts of his body, satisfying the Drummond exception to the exclusivity of the schedule. However, the employee presented no evidence indicating that any nonscheduled portion of his body has been impaired because of his right-foot injury. The employee's assertion that his right-foot injury affects his preexisting left-foot condition is totally refuted by the testimony of his physician to the contrary. Although it is true that the right-foot injury is more problematic for this employee because of his prior left-foot impairment, the record is devoid of any evidence indicating that the right-foot injury has aggravated or otherwise affected the left-foot problem. Even if it did, the injury would still be within the schedule for the loss of use of two feet. See Ala.Code 1975, § 25-5-57(a)(3)a.27.
The employee also argues that his right hand is impaired because he has to use it to grip a cane while walking. The record contains no evidence indicating that the right-foot injury has injuriously affected the employee's right hand. Again, even if it did, the injury would remain within the schedule. See Ala.Code 1975, § 25-5-57(a)(3)a.29. Accordingly, there is no substantial evidence to support a finding that the employee's right-foot injury extends to any other nonscheduled part of the employee's body and interferes with its efficiency. The trial court's judgment awarding benefits outside the schedule is therefore due to be reversed.
NOTES
[1] This court reviewed the workers' compensation judgment in Dale Motels by a writ of certiorari. Under the certiorari standard of review, the trial court's judgment would not be disturbed if there was any legal evidence supporting the factual findings of the trial court. See 50 Ala.App. at 255, 278 So.2d at 372.
[2] Ragland, like Dale Motels, was decided using the certiorari standard of review. See note 2.
[3] Because Hayes injured his right foot, we have referred to Hayes's injury as a "right-foot injury." However, we do not imply that, upon remand, the trial court is precluded from finding that Hayes has in fact lost the use of an entire leg, a scheduled member pursuant to § 25-5-57(a)(3)a.16, Ala.Code 1975, as opposed to the loss of the use of a foot, a scheduled member pursuant to § 25-5-57(a)(3)a.14, Ala.Code 1975.
[4] On the date this opinion was released, this information could be accessed on-line at: http://dir.alabama.gov/docs/guides/wc_2007 weeklywage.pdf. A copy of this information is also available in the case file of the clerk of the Alabama Court of Civil Appeals.
[5] These figures are used as an example and are not intended to indicate any limitation on the employee's compensation on remand. However, I do not agree that the record indicates that the employee could be entitled to benefits for the loss of use of a leg because the evidence indicates that his loss is limited to the right foot, which entitles him to, at most, 139 weeks of benefits. See Ala.Code 1975, § 25-5-57(a)(3)a.14.