BRYAN, Judge.
 

 This is the second time these parties have been before this court.
 
 See G.A. West & Co. v. McGhee,
 
 58 So.3d 167 (Ala.Civ.App.2010)
 
 (“G.A.West
 
 ”). In
 
 G.A. West,
 
 G.A. West
 
 &
 
 Company (“G.A. West”) appealed from the trial court’s judgment awarding Ricky McGhee permanent-total-disability benefits under the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975. In that case, we reversed the trial court’s judgment insofar as it determined McGhee’s average weekly earnings to be $1,328.25, and we remanded the case; we affirmed the judgment in all other respects. 58 So.3d at 177. On remand to the trial court, McGhee sought to conduct discovery relevant to a determination of his average weekly earnings. G.A. West moved the trial court for a protective order preventing discovery from being conducted on remand. G.A. West contended that the trial court should determine McGhee’s average weekly earnings based only on the evidence that had been submitted at trial. The trial court entered an order denying G.A. West’s motion for a protective order. The trial court’s order permitted the parties to conduct discovery and stated that the trial court would hold an evidentiary hearing to determine McGhee’s average weekly earnings. G.A. West then petitioned this court for a writ of mandamus directing the trial court to vacate its order, to grant G.A. West’s protective order, and to determine McGhee’s average weekly earnings without receiving any additional evidence.
 

 “A writ of mandamus is an extraordinary remedy, and it will be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’
 
 Ex parte United Serv. Stations, Inc.,
 
 628 So.2d 501, 503 (Ala.1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal.
 
 Ex parte Drill Parts & Serv. Co.,
 
 590 So.2d 252 (Ala.1991).”
 

 Ex parte Empire Fire & Marine Ins. Co.,
 
 720 So.2d 893, 894 (Ala.1998).
 

 The issue in this case is whether the trial court may receive additional evidence on remand in determining McGhee’s average weekly earnings. In
 
 G.A. West,
 
 we discussed the issue of McGhee’s average weekly earnings:
 

 “G.A. West ... argues that the trial court erred in determining McGhee’s average weekly earnings. Section 25-5-57(b), Ala. Code 1975, establishes methods for calculating an employee’s average weekly earnings. That section first provides:
 

 “ ‘Compensation under this section shall be computed on the basis of the average weekly earnings. Average weekly earnings shall be based on the wages, as defined in Section 25-5-1(6)[, Ala.Code 1975,] of the injured employee in the employment in which he or she was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury divided by 52, but if the injured employee lost more than seven consecutive calendar days during the period, although not in the same week, then the earnings for the remainder of the period, although not in the same week, then the earnings for the remainder of the 52 weeks shall be divided by the number of weeks re
 
 *966
 
 maining after the time so lost has been deducted.’
 

 “Section 25-5-57(b) provides a second method for calculating average weekly earnings if an employee is injured after having worked for an employer for fewer than 52 weeks:
 

 “ ‘Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained.’
 

 “Section 25-5-57(b) also provides a third method for calculating average weekly earnings:
 

 “ “Where by reason of the shortness of the time during which the employee has been in the employment of his or her employer or the casual nature or terms of the employment it is impracticable to compute the average weekly earnings as above defined, regard shall be had to the average weekly amount which during the 52 weeks prior to the injury was being earned by a person in the same grade, employed at the same work by the same employer, and if there is no person so employed, by a person in the same grade employed in the same class of employment in the same district.’
 

 “This court has stated:
 

 “ ‘[T]he employee has the burden of presenting evidence for computation of his average weekly wage.
 
 Cook Transports, Inc. v. Beavers,
 
 528 So.2d 875 (Ala.Civ.App.1988).... [If] the formulas for determining average weekly earnings set out [in § 25-5-57(b) ] are impracticable to apply in a particular case so as to arrive at a just and fair result to both parties, much must be left to the sound judgment and judicial discretion of the trial court.
 
 Unexcelled Mfg. Corp. v. Ragland,
 
 52 Ala.App. 57, 289 So.2d 626 (1974);
 
 Aluminum Workers Int'l v. Champion,
 
 45 Ala.App. 570, 233 So.2d 511 (1970).’
 

 “Stevison v. Qualified Pers., Inc.,
 
 571 So.2d 1178, 1180 (Ala.Civ.App.1990).
 

 “At trial, McGhee, who had the burden of presenting evidence establishing his average weekly earnings, testified that he was hired by G.A. West to work on a project (‘the project’) involving the shutting down of a pulp mill. McGhee testified that he was not a regular employee of G.A. West. McGhee’s hourly wage was $16.50.... McGhee was injured during his second day of employment with G.A. West. A document admitted into evidence at trial indicated that McGhee was paid by G.A. West for working 10 hours daily for 2 days.
 

 “Jason Ward, an iron worker who worked with McGhee for G.A. West, testified at trial. Ward testified that McGhee was injured during the beginning of the ‘pre-down’ phase of the project. Ward stated that the pre-down phase lasted approximately a month and that he worked 10 hours a day for 5 days a week during that period. Ward testified that the pre-down phase was followed by a ‘shutdown’ phase that lasted approximately a month. Ward stated that, during the shutdown phase, he worked 12 hours a day for 7 days a week.
 

 “In its judgment, the trial court stated:
 

 “ ‘[Section] 25-5-57(b) ... sets forth the manner in which the average weekly wage is to be calculated. However, none of the scenarios outlined in that statute fit the facts of this case because of the fact that Mr.
 
 *967
 
 McGhee was injured on the second day of the work, and after the project had only begun. Therefore, in keeping with the case of
 
 Slay Transportation Company, Inc. v. Miller,
 
 702 So.2d 142 (Ala.Civ.App.1997), the court finds that the most equitable means of arriving at the appropriate average weekly wage is to use a combination of the wages paid to Mr. McGhee for the two days which he worked and the testimony from Mr. Ward documenting the wages he would have earned but for the injury. Under that analysis, the court hereby finds that Mr. McGhee’s average weekly wage on the date of his injury was $1,828.25-’
 

 “Because McGhee had worked fewer than 52 weeks for G.A. West before his injury, the first method prescribed by § 25-5-57(b) is clearly inapplicable. Both McGhee and G.A. West contend that using the second method found in § 25-5-57(b) would be inequitable because McGhee worked for only two days for G.A. West. G.A. West argues that the trial court erred by not applying the third method found in § 25 — 5—57(b). McGhee argues that, because he was injured soon after beginning work on a specific project, it would be inequitable, in calculating McGhee’s average weekly earnings, to rely on the earnings of a welder/iron worker accumulated during the 52-week period immediately before McGhee’s injury.
 

 “Our supreme court has discussed the application of the third method found in § 25 — 5—57(b):
 

 “ ‘It must be noted that so much of the provision as deals with cases falling under [the third method] does not make it a hard and fast rule on the trial court to award the same wages or earnings as those earned by others there referred to. It simply requires that the court must have ‘regard’ to such average weekly earnings of others in making an award in the instant case, but does not mean that the amount fixed must be identical to the weekly earnings of the others. In other words, it must be regarded as an evidential, though not conclusive, factor, in the ascertainment of the award in hand, taking into consideration, of course, any physical differences such as the interruption or constancy in the respective employments.’
 

 “Garrison v. Woodward Iron Co.,
 
 210 Ala. 45, 46, 97 So. 64, 64 (1928).
 

 “In arguing that the third method should be applied, G.A. West focuses on a document purporting to show the earnings of an unnamed iron worker who had worked for G.A. West during the 52-week period preceding McGhee’s accident. The only indication on the document that the employee is an iron worker is the handwritten notation ‘Iron Worker’ at the top of the document. Like McGhee, the unnamed employee earned $16.50 per hour. The document indicates that the employee earned $37,759.67, or a weekly average of $726.15, during the 52-week period before McGhee’s accident.
 

 “When counsel for G.A. West sought to admit the document at trial, counsel for McGhee objected, stating: T don’t think there’s been any proper foundation laid that he’s a similar employee [to McGhee]. I don’t know who this employee was. We don’t know what the job was....’ The trial court initially sustained the objection to the document. However, the trial court later admitted the document over the continued objection of McGhee’s counsel. When the trial court admitted the document, the trial court stated:
 

 
 *968
 
 “ ‘I’m going to admit [the document] on the grounds of what you have just now raised[,
 
 i.e.,
 
 to show the work activity at the mill,] but I’ll make it real clear, I’m admitting it, but I’ll be [the] gauger of the weight to give it.... I’m not going to give it very much weight because ... you just grabbed one employee out of the pot and it may be indicative of that to some extent, it may have some bearing on this, so it would be something that I would look at[.] [B]ut I’ll have to determine as I study it and think through and compare it to the other evidence as to how much weight I’m going to give it.’
 

 “The third method prescribed by § 25-5-57(b) requires the trial court to ‘regard’ the average weekly earnings of an employee similarly situated to McGhee. The trial court, in computing McGhee’s average weekly earnings, indicated that it would consider the document showing the earnings of an employee purportedly similarly situated to McGhee. However, the trial court, concerned that that employee’s work may not accurately reflect the work that McGhee performed and would have performed for G.A. West, evidently assigned the document very limited weight. Under the third method found in § 25-5-57(b), although a trial court must consider evidence of the average weekly earnings of a similarly situated employee, that evidence is not conclusive.
 
 Garrison,
 
 210 Ala. at 46, 97 So. at 64. As noted, a trial court may depart from the methods prescribed by § 25-5-57(b) if those methods fail to produce a just and fair result.
 
 Stevison,
 
 571 So.2d at 1180. In such situations, much must be left to the discretion of the trial court in determining an employee’s average weekly earnings.
 
 Id.
 
 Given the facts of this case, the trial court did not err in deviating from the methods found in § 25-5-57(b) in determining McGhee’s average weekly earnings.
 

 “Although the trial court did not err in deviating from the methods prescribed by § 25-5-57(b), we cannot affirm the trial court’s calculation of McGhee’s average weekly earnings. The amount determined by the trial court to be McGhee’s average weekly earnings — $1,328.25—appears to be an amount closer to McGhee’s maximum possible weekly earnings than his actual average weekly earnings.
 

 “McGhee testified that he was hired by G.A. West to work on the project and that he was not a regular employee of G.A. West. McGhee further testified:
 

 “‘Q. [By counsel for G.A. West:] ... [B]efore you went to work with G.A. West, it was your practice to work shutdowns for companies, right?
 

 “ ‘A. Yes, sir. And we—
 

 “ ‘Q. You’d work a few weeks here and few weeks there?
 

 “ ‘A. Yes, sir.
 

 “ ‘Q. And you had periods—
 

 “‘A. Yes, sir.
 

 “ ‘Q. —Prior to going to work for G.A. West where you were out of work for extended periods of time?
 

 “‘A. Yes, sir.’
 

 “The trial court calculated McGhee’s average weekly earnings to be $1,328.25. That amount indicates the average weekly wage that McGhee would have earned during the project, which lasted two months, had he not been injured. However, that amount does not appear to reflect the average weekly earnings that McGhee would have earned over the course of a year working as a welder and an iron worker. McGhee agreed that he was unemployed for ‘extended periods of time’ before working for G.A.
 
 *969
 
 West and that he would “work a few weeks here and few weeks there.’ He also acknowledged that he was hired by G.A. West specifically to work on the project. McGhee’s testimony suggesting that he was sporadically employed as a welder and an iron worker is inconsistent with the trial court’s determination that McGhee’s average weekly earnings are $1,828.25. That amount represents an average 67-hour work week — 40 regular hours and 27 overtime hours — at McGhee’s hourly wage of $16.50. The calculation of the average weekly earnings should determine the amount that the employee has lost due to the injury.
 
 See Ex parte Murray,
 
 490 So.2d 1238, 1241 (Ala.1986). Although the trial court’s calculation of McGhee’s average weekly earnings accurately reflects the earnings that McGhee lost during the duration of the project, the record does not indicate that the trial court’s calculation accurately reflects the earnings that McGhee could be expected to lose over the course of an entire year. Accordingly, we must reverse that part of the judgment determining McGhee’s average weekly earnings.
 

 ‘We reverse the judgment of the trial court insofar as it determined McGhee’s average weekly earnings to be $1,328.25. In all other respects, we affirm the judgment of the trial court.”
 

 58 So.3d at 170-77.
 

 G.A. West argues that the trial court, in determining McGhee’s average weekly earnings on remand, may not receive additional evidence and may consider only the evidence that was submitted at trial. Conversely, McGhee argues that the trial court should receive additional evidence to properly determine McGhee’s average weekly earnings.
 

 “ ‘ “It is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court. No judgment other than that directed or permitted by the reviewing court may be entered.... The appellate court’s decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate, without granting a new trial or taking additional evidence....’””
 

 Ex parte Edwards,
 
 727 So.2d 792, 794 (Ala.1998) (quoting
 
 Ex parte Alabama Power Co.,
 
 431 So.2d 151, 155 (Ala.1983), quoting in turn 5 Am.Jur.2d
 
 Appeal and Error
 
 § 991 (1962)). Our supreme court has stated that “a trial court does not have the authority to reopen for additional testimony a case that has been remanded to it, except where expressly directed to do so.”
 
 Ex parte Queen,
 
 959 So.2d 620, 622 (Ala.2006).
 

 Although this court in
 
 G.A West
 
 did not expressly direct the trial court to receive additional evidence on remand, we now conclude that it is necessary for the trial court to receive additional evidence to properly determine McGhee’s average weekly earnings. Originally, the trial court determined McGhee’s average weekly earnings by using “ ‘a combination of the wages paid to Mr. McGhee for the two days which he worked and the testimony from Mr. Ward documenting the wages he would have earned but for the injury.’ ”
 
 G.A. West,
 
 58 So.3d at 172. However, this court rejected that approach in
 
 G.A. West.
 
 The remaining evidence that may be used to determine McGhee’s average weekly earnings consists of the document indicating the earnings of an unnamed iron worker. However, as we noted in our previous opinion, “the trial court, concerned that
 
 *970
 
 [the unnamed iron worker’s] work may not accurately reflect the work that McGhee performed and would have performed for G.A. West, evidently assigned the document very limited weight.” 58 So.3d at 173. On remand, if the trial court is limited to considering only the evidence already submitted, then the trial court would seemingly be placed in the position of having to rely on the iron-worker document, which the trial court evidently gave very little weight. Accordingly, the trial court understandably permitted the parties to submit additional evidence on remand in an attempt to accurately determine McGhee’s average weekly earnings. Now that the issue of reopening the evidence is squarely before us, we acknowledge the usefulness of permitting the submission of additional evidence on remand in this ease.
 

 We recognize that at trial McGhee had the burden of presenting evidence regarding the calculation of his average weekly earnings.
 
 G.A. West,
 
 58 So.3d at 171 (citing
 
 Stevison v. Qualified Pers., Inc.,
 
 571 So.2d 1178, 1180 (Ala.Civ.App.1990)). However, the existence of such a burden does not preclude an appellate court from permitting a trial court to take additional evidence on remand. In
 
 Aldridge v. Dolbeer,
 
 567 So.2d 1267 (Ala.1990), the plaintiffs sued the defendants, alleging breach of contract. Following a nonjury trial, the trial court entered a judgment in favor of the plaintiffs, awarding damages in the amount of $10,270. On appeal, our supreme court noted that the plaintiffs had the burden of producing evidence that would allow a fact-finder to calculate damages. 567 So.2d at 1270. The supreme court affirmed the trial court’s judgment insofar as it determined liability, but it reversed the judgment with respect to the amount of damages. The court in
 
 Al-dridge
 
 determined that the evidence submitted did not support the amount of damages awarded.
 
 Id.
 
 Therefore, the court reversed that portion of the judgment awarding damages and remanded the case “for an evidentiary hearing to determine an amount that would be sufficient to restore the [plaintiffs] to the position they would have occupied had the breach not occurred.”
 
 Id. See also Lolley v. Citizens Bank,
 
 494 So.2d 19 (Ala.1986) (reversing a judgment and remanding the case to the trial court to conduct an evidentiary hearing for the determination of attorney’s fees considering specific guidelines).
 

 Similar to an award of damages for a breach of contract, a calculation of an injured employee’s average weekly earnings should reflect the amount that the employee has lost due to the injury.
 
 See International Paper Co. v. Murray,
 
 490 So.2d 1238, 1241 (Ala.1986). An accurate calculation of an employee’s average weekly earnings is essential to a fair award of workers’ compensation. Due to the limited evidence in the record, additional evidence is necessary to ensure an accurate computation of McGhee’s average weekly earnings.
 

 This case does not present an example of a party seeking to submit evidence on remand in what may be perceived as an attempt to undermine an appellate court’s mandate. For example, in
 
 Alabama Power Company v. Smith,
 
 409 So.2d 760 (Ala.1981), our supreme court reversed a judgment for the plaintiffs in a negligence action, concluding that the defendant did not owe a duty to the plaintiffs. The supreme court remanded the case for the trial court to enter a judgment in accordance with the supreme court’s opinion.
 
 Id.
 
 at 764. On remand, the plaintiffs filed a motion for a new trial. The defendant subsequently petitioned the supreme court for a writ of mandamus directing the trial court to enter a judgment in the defendant’s favor.
 
 Ex parte Alabama Power Co.,
 
 431 So.2d 151 (Ala.1983). On mandamus review, the supreme court determined that the issue of duty, an essential element of the plain
 
 *971
 
 tiffs’ negligence claim, had already been conclusively decided in favor of the defendant; therefore, a new trial was unnecessary. 431 So.2d at 154-55. Thus, the supreme court concluded that the trial court should enter a judgment in the defendant’s favor.
 
 Id.
 
 at 155.
 

 In
 
 Ex parte Alabama Power,
 
 the plaintiffs sought another opportunity on remand to establish the liability of the defendant. The present case is more like
 
 Aldridge
 
 in that the only issue remaining for the trial court to determine is McGhee’s average weekly earnings, a computation analogous to the award of damages in
 
 Aldridge.
 
 Given the evidence in the record, it appears that the submission of additional evidence will likely yield a more accurate calculation of McGhee’s average weekly earnings. Thus, the trial court’s order permitting the submission of additional evidence was consistent with our opinion in
 
 G.A. West,
 
 in which we reversed the trial court’s initial calculation of average weekly earnings while noting the relatively meager evidence on that subject.
 

 Accordingly, we take this opportunity to state that the trial court may receive additional evidence on remand regarding the issue of McGhee’s average weekly earnings. The computation of the average weekly earnings should be consistent with the discussion on that issue in
 
 G.A. West.
 
 We deny G.A. West’s petition for a writ of mandamus seeking to prevent discovery and the submission of additional evidence on remand.
 

 PETITION DENIED.
 

 THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
 

 MOORE, J., recuses himself.